CHARLES F. MILLER ᴇᴛ ᴀʟ. *vs.* COSMIC CEMENT
TILE AND STONE COMPANY.

*Divisibility of Contract by Corporation Valid in Part and In-*
*valid in Part—Contract of Corporation Terminated by*
*Insolvency—Compensation for Services Rendered.*

A contract by a corporation to issue a certain number of shares
of stock to a person in consideration of his transfer of prop-
erty to it, and to pay that person a certain sum of money for
services to be rendered, is divisible, and if the agreement to
issue the shares of stock is invalid, because not ratified by the
stockholders in the manner prescribed by statute, the other
agreement as to employment is valid.

When the insolvency of a corporation renders impossible the
further performance of a contract of employment, the person
rendering the services is entitled to compensation to the extent
of his part performance, according to the contract price.

A corporation was organized to make cement, etc., according to
a secret formula and process invented by one W., who agreed
to transfer the same to the company in consideration of
ninety thousand dollars of its capital stock, and of ten thou-
sand dollars as compensation to W. for his services to the
company as chemist, of which two thousand dollars was to be
paid in cash and two hundred dollars per month thereafter
until said sum should be fully paid. This agreement was made
with the Board of Directors only. Code, Art. 23, Sec. 69,
provides that subscriptions to the capital stock of a corpora-
tion in property shall not be received unless previously author-
ized by the stockholders in general meeting. After W. had
served as chemist in pursuance of the agreement for some
months, the company became insolvent, and upon a distribu-
tion of its assets, W. claimed to be entitled, as a creditor, to
the extent of ten thousand dollars, less payments made to him.
*Held,* that although the agreement to issue the shares of stock
to W. was invalid because in violation of the statute, yet the
agreement to employ him as chemist was valid.

*Held,* further, that W. is entitled to claim as a creditor for the sum of two thousand dollars, which was to be paid him in cash, upon beginning the services, and for the stipulated salary of two hundred dollars per month until the receiver was appointed, less amount paid him on account.

*Held,* further, that of this total claim W. is entitled to the full amount of salary for three months before the appointment of the receiver, and that on the balance of his claim he should be allowed a dividend as a general creditor.

*Decided November 14th, 1908.*

Appeal from the Circuit Court No. 2 of Baltimore City (GORTER, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and HENRY, JJ.

*Edwin H. Brownley* (with whom was *Martin G. Kenney* on the brief), for the appellants.

*B. B. Shreeves,* for the appellee, submitted the cause on his brief.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from an order of Circuit Court No. 2 of Baltimore City sustaining exceptions to an auditor's account and directing its restatement in a designated manner. The account distributed the assets of the appellee company which had, by a previous order in this case, been placed in the hands of a receiver for liquidation because of its insolvency. The only claim involved in the exceptions is the one filed by Dr. P. B. Wilson, Jr., for a balance of $9,415, alleged to be due on account of salary agreed to be paid to him as chemist.

It appears from the record that Dr. Wilson after several years of experimenting had made what was believed to be a new and useful discovery in the production of cement, tile and stone. · During these experiments he had received financial

and practical assistance from James F. Morrison and Morrill N. Packard. In July, 1904, the appellee company was incorporated with a capital stock of $200,000, under the general laws of the State, by Morrison, Packard, Wilson and others for the purpose of manufacturing and dealing in cement, tile and stone to be made after the formula discovered by Dr. Wilson. About $17,800 of the stock was subscribed for by persons other than Dr. Wilson, and those subscriptions were eventually paid up to the company or its receiver.

On July 26th, 1904, at the first corporate meeting of the company, Dr. Wilson made to it in writing a proposition to "sell, dispose of and transfer" his discovery and the secret formula embodying it, with the sole and exclusive right to the use thereof, to be paid for upon the following terms, as set forth in his offer:

"The terms upon which I offer to sell and transfer the aforesaid discovery and formula to your company are that I shall receive the sum of one hundred thousand ($100,000) dollars for the same, and that your company shall enter into a contract to employ me in the capacity of Chemist for said company at such a salary as shall be determined upon to be fair compensation for my service, taking into consideration the earnings thereof.

"I agree to take as part payment of said sum of one hundred thousand ($100,000) dollars, ninety thousand ($90,-000) dollars' worth of the capital stock of your company at its par value, and the balance of ten thousand ($10,000) dollars in such cash payments and as promptly and at such times as will not seriously interfere with the successful operations of your company financially.

"I agree that said cash sum of ten thousand dollars ($10,-000) shall be in lieu as salary as Chemist, until said sum has been fully paid, as follows: Two thousand dollars ($2,000) in cash upon the execution of said transfers and agreements and two hundred dollars per month ($200.00) thereafter until said sum of ten thousand ($10,000) dollars has been

fully paid, said payments to commence on the first day of August, 1904."

It is apparent from the terms of this proposed disposal of the discovery and formula to the company in consideration to the extent of $90,000, of the issue by it of its capital stock, as well as from the manner of its attempted acceptance on the part of the company that the transaction was intended to be a subscription by Dr. Wilson to that amount of its stock to be paid for in property, consisting of the discovery and formula, under the provisions of Sec. 69 of Art. 23 of the Code.

The proposition thus made was referred by the company to a committee of three directors for investigation, with instructions to report to a meeting of the *board of directors,* to be held on July 28th, "to consider the propriety of making said purchase and to fix the terms upon which it should be made." At the meeting of the *board of directors* held on July 28th, this committee reported that after having "examined carefully the merits, worth, use and adaptability of the discovery and formula offered by Dr. Wilson, both as to its scientific and commercial values," they found it to be of great present and prospective value, and they recommended its purchase upon the terms set forth in the offer of sale made by him. The offer was then formally accepted by a resolution of the *board of directors,* which also authorized the president of the company to do all acts on its behalf requisite to the consummation of the transaction.

The company having failed to pay the bonus tax to the State prior to the meetings of July *26th* and *28th,* the tax was paid and the proceedings of the *board of directors* at those two meetings were formally ratified at a *meeting of that board* held on September *1st,* 1904. The record, however, contains no evidence that the acquisition by the company of Dr. Wilson's discovery and formula in return for the issue to him of $9,000 of its stock was ever authorized by *"its stockholders assembled in general meeting pursuant to a call to consider the propriety of receiving it,"* as is required by

Sec. 69 of Art. 23 of the Code as a condition precedent to the validity of the acceptance by such corporations of any species of property in payment of subscriptions to any part of their capital stock.

Neither a written transfer nor an actual delivery of the formula nor a disclosure of its contents was ever made by Dr. Wilson to the company, nor were the $90,000 of stock ever actually issued to him, but the company had the benefit of the use of the process described in the formula in its manufacturing operations, which were conducted under the direction and supervision of the Doctor himself as its chemist. The formula remained in a safe deposit box in the Drovers and Mechanics National Bank in the joint custody of Morrison, Dr. Wilson and Packard, where it had been for some time prior to the organization of the company. There was an understanding between the parties interested in the company that no certificates of stock should be issued until after the lapse of a year from its incorporation.

The company having thus obtained the use and benefit of Dr. Wilson's process established a factory and plant and endeavored, under his supervision, to manufacture and sell the products to which it was believed to be adapted. The material produced at the factory proved to be unsaleable and of no market value and the company became financially embarrassed, by its manufacturing enterprise, to such a degree that its insolvency supervened and it was put in the hands of a receiver for liquidation, on the bill of complaint of a creditor, by an order of Court passed in this case on June 12th, 1905.

During the progress of the liquidation of the company's affairs, Dr. Wilson filed in the case his claim, as a creditor of the company, which forms the subject of the present controversy. That claim is stated upon the theory that the Doctor is, under his agreement with the company, entitled to $10,000 salary as its chemist, and the alleged balance of $9,415 in controversy is arrived at by allowing credit on the $10,000, for several payments made thereon, amounting

to $585.    The auditor in his account distributing the net
assets in the hands of the receiver treated Dr. Wilson as a.
general creditor to the extent of $9,415 and interest, and
allowed him a dividend thereon.

To that allowance exceptions were filed by the appellants,.
William Hollingsworth, who is a creditor of the company,.
and James F. Morrison, who is both a creditor and stock-
holder.    The exceptions go, among other things, to the va-
lidity of the claim and of the contract upon which it is.
founded.    The learned Judge below sustained the exceptions.
and directed the statement of a new account allowing a divi-
dend to Dr. Wilson as a general creditor "upon two thou-
sand dollars as of the date of September 2nd, 1904, and a.
dividend upon the further sum of $2,200 (being eleven
months at the rate of $200 a month from August *1st,* 1904),.
less the sum of $585 to be deducted from the said sum of
$2,200 at the times when the amounts were paid which con-
stitute the sum of $585."    We think neither the theory adopt-
ed by the auditor in stating his account, nor the conclusion
reached by the Court below in its action upon the exceptions,.
was entirely correct.

We will first consider whether the attempted contract be-
tween Dr. Wilson and the company ever became binding
upon the parties to it and, if so, to what extent.    Its most
essential feature, consisting of the effort to pay for $90,000·
of the capital stock of the company by a transfer to it of the·
formula for the manufacture of the articles therein men-
tioned, was void because of the failure on the part of the·
company to comply with the imperative and unequivocal
requirements of the statute law relating to the issue of stock
by corporations.

Sec. 69 of Art. 23 of the Code provides that "subscrip-
tions to the capital stock of such of said corporations as
have capital stock may be made in land or other property at
a valuation agreed upon between the corporation and the sub-
scriber, where the property so subscribed shall be such as it is·
proper that the said corporation shall own for the advance-

ment of the purposes for which it was incorporated, but such subscriptions shall not be otherwise received, *nor shall they be so received unless the same shall have been previously authorized by the stockholders assembled in general meeting,* pursuant to a call to consider the propriety of receiving the said subscription and of fixing the terms upon which it shall be received." It was beyond the power of the appellee to make a valid contract to receive property of any kind in payment for any part of its capital stock in plain violation of the express conditions imposed upon it by that Section. *Baile* v. *Calvert College,* 47 Md. 117; 9 *Cyc.* 475.

Although the action of the board of directors of the company was ineffectual to authorize the acceptance of the discovery and formula of Dr. Wilson in payment for capital stock, it was not necessarily inadequate to make a valid contract for his employment as chemist, especially when it was followed up by an acceptance on the part of the company of his services in that capacity. The proposal of Dr. Wilson to the company was in a certain sense a twofold one. He offered to transfer to it his discovery and formula and also to enter its service as chemist, and he exacted two things in return, the issue to him of $90,000 in stock and the payment to him of $10,000. Although his proposal to the company in one place mentions $100,000, as a gross consideration for the several things which he offered to do, the last clause distinctly states "that the said cash sum of ten thousand dollars ($10,000) shall be in lieu of salary as chemist until said sum has been fully paid."

We think the contract attempted to be made by the acceptance of this proposal should be held, upon a fair construction of its terms, to have been divisible, and the portion of it relating to the employment of the Doctor by the company as its chemist be held to be binding upon the parties, although the part relating to the issue of stock and the transfer of the discovery and formula must, for the reasons already stated, be held to have been void. Even if the divisibility of the contract be held to be doubtful, the Doctor would still be entitled to re-

cover upon a *quantum meruit* for the services as chemist which were actually rendered by him and accepted by the company up until the appointment of the receiver. We have repeatedly held that where the work provided for in a contract has been done by the party required thereby to do it and his work has been accepted by the other party a recovery therefor may be had on the common counts in assumpsit and the contract price will be treated as the measure of damages. *Ridgely* v. *Crandall,* 4 Md. 435; *Appleman* v. *Michael,* 43 Md. 273; *City & Suburban Ry. Co.* v. *Basshor,* 82 Md. 405; *Walsh* v. *Janvey,* 85 Md. 240; *Southn. Bldg. Assn.* v. *Price,* 88 Md. 155.

In the last-mentioned case, we held that when the plaintiff had performed his part of a contract with a corporation until the appointment of a receiver for the corporation rendered the further performance of the contract by him impossible, he was entitled to recover to the extent of the part performance made by him and accepted by the corporation. We have also held in a series of other cases that, when the appointment of a receiver for a building association rendered impossible the further performance by it of the contracts with its members, the contracts were thereby terminated and the members were entitled to be allowed by the auditor, in the liquidation of the assets of the corporation, for the value of the performance by them of their contracts until the appointment of the receiver. *Low St. Bldg. Assn* v. *Zucker,* 48 Md. 448; *St. Peter's Bldg. Assn.* v. *Jaecksch,* 51 Md. 205; *Hampstead Bldg. Assn.* v. *King,* 58 Md. 280; *Preston* v. *Woodland,* 88 Md. 163.

The appointment of the receiver in the present case having rendered impossible the further performance by Dr. Wilson of his duties as its chemist, the further question remains as to the measure of compensation to be allowed him for his previous services in that capacity.

By the terms of the contract $2,000 were to be paid in cash "upon the execution of the transfers and agreements" called for by his proposal and $200 per month thereafter. As

we have held the acceptance of his proposal by the board of directors of the company to be sufficient, in connection with the proposal,* to constitute a valid contract of employment as chemist, we think that such acceptance should in equity be regarded as the "execution of the agreement" referred to in the proposal, *quoad* that employment, and that the $2,000 then to be paid should be included in Dr. Wilson's claim. The agreement to pay him so large a cash sum on entering the employment was an unusual one, but he testified without contradiction that it was demanded by him because he was required to abandon his practice in order to devote himself exclusively to the service of the company and that he had explained that matter to the board of directors.

He appears from the record to have served the company as chemist for the eleven months prior to the receivership, for which $2,200 would be due him under the terms of the contract. We therefore think that Dr. Wilson's claim should be recognized as valid to the extent of $4,200 less the $585, admitted to have been paid him on account, making his actual claim amount to $3,615, with a due proportion of interest. Of this claim $600 should be allowed in full as salary accruing within three months anterior to the appointment of the receiver and on the balance of the claim he should be allowed a dividend as a general creditor of the company.

The order appealed from will be reversed and the case remanded for further proceedings in accordance with this opinion.

> *Order reversed and cause remanded for further proceedings in accordance with this opinion, the costs of the appeal to be paid out of the fund in the hands of the receiver.*