HARRY D. WILLIAR *vs.* GEORGE A. NAGLE ET AL.

*Right of Architect to Compensation for Plans—Change in Plans Increasing Cost of Building.*

Plaintiffs, architects, were employed by the defendant to make plans for a building of six stories to cost not more than $70,000. After an elevation, floor and typical plans were submitted to, and accepted by, the defendant, he decided to erect an eight-story building to cost not more than $90,000. Plaintiffs said that such a building, according to said plans, could be erected for that sum, and they were employed to prepare the plans for it upon that understanding. In an action to recover compensation for their services, plaintiffs' evidence was to the effect that while the drawings were being made defendant directed alterations to be made in the original plans, such as the addition of cafe, fireproofing throughout, and the best materials in construction, the original plans not having specified the materials. Defendant alleged that the plaintiffs were directed to prepare a plan for the eight-

story building which was to be of the same general character
as shown on the plan for the six-story building, and that the
changes made at defendant's suggestion were acted on by the
plaintiffs without any warning that the cost of the building
would be thereby increased, and that his suggestions related
to matters of construction in regard to which the original
drawings gave no information. The plans as finally com-
pleted provided for a building which could not have been
erected for less than $125,000. *Held,* that the jury were
properly instructed that if the defendant employed the plain-
tiffs to prepare plans for an eight-story building of the same
character as those prepared for the six-story building, if the
same could be erected for $90,000, and that while the draw-
ings were being made the defendant ordered changes in the
construction to be made which increased the cost beyond that
sum, then the plaintiffs are entitled to recover, if the build-
ing could have been put up for the sum of $90,000 without
such changes; but if the agreement of the parties was that
the plaintiffs were not to be entitled to compensation unless
the building could be erected according to their specifications
for $90,000, then the verdict must be for the defendant.


*Decided June 22nd, 1910.*


Appeal from the Superior Court of Baltimore City (STOCK-
BRIDGE, J.).


The prayers referred to in the opinion of the Court are
as follows:

*Plaintiffs' 2nd Prayer.*—If the jury find the plaintiffs
prepared certain designs for a six-story building with the
understanding that they should be employed by the defend-
ant if the designs so prepared by them were accepted; and
the jury further find that the designs so prepared were ac-
ceptable and accepted by the defendant; and the jury further
find that the designs made were for a building which could
have been constructed at a cost of from $60,000 to $70,000;
and the jury further find that this was the sum which the

defendant advised the plaintiffs he was willing to expend upon said six-story building; and the jury further find that the defendant then concluded to have an eight-story building constructed and that the plaintiffs told him that a building of two additional stories of the same character of construction as that of this design could be constructed and completed for the sum of $90,000, and that these plaintiffs were directed to proceed with the working drawings for said building, that while said plans or working drawings were being prepared the jury find that from time to time the defendant suggested modifications and changes of materials and construction of the building, whereupon the cost of the building was increased beyond the sum of $90,000, the plaintiffs are entitled to recover if the jury find that without said changes (if they find the same) the building so designed could have been completed for the sum of ninety thousand dollars. (*Granted in connection with defendant's 2nd, 5th, 6th and 8th prayers.*)

*Plaintiff's 3rd Prayer.*—If the jury find the plaintiffs are architects, and the defendant employed them to prepare plans and specifications for a building to be erected on the corner of Charles and Read streets, owned in part by the defendant, and they further find that the plaintiffs did prepare such plans and specifications, then the plaintiffs are entitled to recover, unless the jury find it was understood and agreed by the plaintiffs that the building to be constructed under their plans should cost less than a certain sum of money, and the jury further find that the building could not be built or constructed for a sum of money reasonably approximating the amount so agreed upon. (*Granted in connection with defendant's 2nd, 5th, 6th and 8th prayers.*)

*Plaintiffs' 4th Prayer.*—If the jury find for the plaintiffs, then the amount to which the plaintiffs are entitled to recover is such amount as the jury may find that the work done by them is reasonably worth. (*Granted.*)

*Defendant's 2nd Prayer.*—If the jury shall find from the evidence that there was an understanding or agreement between the plaintiffs and the defendant that the services for which suit is brought should not be paid for unless a building could be erected according to the plans and specifications prepared by the plaintiffs for a sum not exceeding $90,000 and shall further find that a building could not be erected according to the plans and specifications prepared by the plaintiffs for less than $125,000, then the verdict must be for the defendant.     (*Granted in connection with the plaintiffs' prayers.*)

*Defendant's 5th Prayer.*—If the jury shall believe from the evidence that the plaintiffs undertook to prepare plans for a building for the defendant upon the condition that they were not to be paid for their services unless they could furnish plans which would be satisfactory to the defendant and upon which a building could be erected at a cost satisfactory to the defendant, and that in accordance with such undertaking the plaintiffs from time to time submitted to the defendant various sketches or preliminary drawings, none of which were accepted by the defendant, but that finally; on or about the 22nd day of January, 1906, plans were submitted and the plaintiffs represented to the defendant that a building could be erected in accordance with such plans for $83,000 fully equipped and ready for occupancy and guaranteed that a building so erected in accordance with such plans would not cost over $90,000, and that thereupon the defendant accepted such plans upon the condition that a building fully equipped and ready for occupancy could be erected in accordance therewith for not over $90,000 and that the plaintiffs then proceeded to prepare working drawings and specifications for such a building, yet if the jury shall further find that a building could not have been erected (*in accordance with the plans and specifications so prepared*) for $90,000, their verdict must be for the defendant. (*Granted as modified.*)

*Defendant's 6th Prayer.*—If the jury shall find from the evidence that there was a contract or understanding between the parties, plaintiffs and defendant, by which the plaintiffs were to make plans and specifications for an apartment building to be erected in Baltimore City, to cost not over $90,000, and that the plaintiffs prepared plans and specifications, but that a building in accordance with such plans could not have been erected for $90,000, then their verdict must be for the defendant. (*Granted.*)

*Defendant's 8th Prayer.*—If the jury find from the evidence that the plaintiffs undertook to prepare plans and specifications for a building to be erected in Baltimore City to cost not over $90,000, and that the plaintiffs prepared plans and specifications for such building but that a building in accordance with such plans could not have been erected for $90,000 (*or a sum reasonably approximating that amount*), then their verdict must be for the defendant. (*Granted as modified.*)

The cause was argued before BOYD, C. J., PEARCE, BURKE, THOMAS, PATTISON and URNER, JJ.

*Albert C. Ritchie* and *Stuart S. Janney* (with whom was *Armstrong Thomas* on the brief), for the appellant.

*John E. Semmes, Jr.,* and *Wm. Fell Johnson, Jr.,* for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is the second time this case has been before us, the former decision being reported in 109 Md. 75. We then held that if an architect is employed to prepare plans and specifications for a building which is not to cost more than a specified amount, he is not entitled to recover compensation for them unless the building can be constructed, in accordance with them, at a cost which is not greater than or reasonably near that amount, and that ordinarily whether it

can be so constructed is a question for the jury. The judgment was reversed because of error in one of the plaintiffs' prayers, and the plaintiffs having obtained a verdict at the second trial, the defendant has again appealed to this Court. The case now presents questions not passed on before.

On this appeal the argument has been confined to the plaintiffs' second prayer which the appellant contends was erroneous, and that the prayers granted at his instance did not relieve it of the objections. We will ask the Reporter to include this and the defendant's granted prayers in his report of the case. That prayer of the plaintiffs does not seem to us to be objectionable, especially as it was marked granted in connection with the defendant's prayers. The theory of the plaintiffs, as presented by it, was that after they had prepared plans for a six-story building which would not have exceeded the cost to which they were limited by the defendant, and after those plans were accepted by the defendant as satisfactory, the defendant concluded to have an eight-story building erected, and the plaintiffs told him that such a building, *of the same character of construction* as that shown by the designs for the six-story building, could be erected for $90,000; that the plaintiffs were then directed by the defendant to proceed with the working drawings for an eight-story building of that character, but while the plans and working drawings were being prepared the defendant from time to time suggested modifications and changes of materials and construction of the building which increased the cost beyond $90,000 and made it substantially a building of different character, although a building of the character originally designed by them could have been built for that sum.

The prayer cannot be objected to on the mere ground that there was no legally sufficient evidence that there were such modifications and changes by the defendant as caused the increased cost, because there was no special exception to it, and hence such objection cannot be made in this Court,

under our well-established practice and rules. But if that were not so, there is undoubtedly some evidence that material changes and modifications were made, which did cause the increased cost. Mr. Nagle, one of the plaintiffs, specified a number of them—some of which were on the exterior of the building, but more in the interior, such as making the building fireproof throughout, tile work, electric wiring, change of the woodwork, adding electric dumbwaiters, from the basement to the upper floors and costing $3,400 a pair, a cafe and other things. It will not do to say that no one would erect a building for such purposes as this was intended for without making it fireproof, without a cafe, etc., for Mr. Nagle's testimony is to the effect that it was to be so constructed, as originally planned. Moreover, the evidence shows that at least one other building of the kind in Baltimore, with which the proposed one was compared, is not fireproof, and the evidence does not show that it had a cafe.

Nor is the position of the appellant tenable that the plans for the first building which were offered in evidence show that there were no detailed drawings or specifications, and hence it cannot be said that changes and modifications were made. That might have been a good argument before the jury, but if Mr. Nagle's testimony is to be accepted, as it must be in considering this point, and the jury evidently believed it, judging from the verdict, the parties understood the character of the building proposed to be built, and the prayers submitted the question whether the plans were acceptable and accepted by the defendant. If such plans were acceptable and accepted for a six-story building, the parties might also have agreed that those for the same character of construction could be made for an eight-story building. It may be improbable that an owner would make such an agreement without knowing the exact character of the materials and construction to be used, but that was for the jury to decide, and not for us in construing the prayers. Mr. Nagle testified positively that a six-story building could have been

built, according to the plans furnished by them, for the price named, and also that an eight-story building could have been built of the same character for $90,000. No question of fraud or bad faith was raised at the trial below, and it cannot be assumed that what Mr. Nagle said as to the cost of the building originally proposed is not true. It may be that such a building as the defendont intended could not have been built for the price named, but if he left the details entirely to Nagle, and Nagle was acting in good faith, the appellant cannot now escape payment for his services because he expected something different from what Nagle understood and had in view, unless the latter did or said something which deceived or misled him, which was not contended below, so far as the record shows.

The defendant said that Nagle did not tell him what kind of wood was to be used, and that he did not remember that Nagle told him that the six-story building was to be fireproof, although he understood it was to be. He said that, "Mr. Nagle submitted many plans, there might have been half a dozen, I do not mean absolute plans, but rough sketches." On cross-examination he said, "on January 23rd, Mr. Nagle presented final blue prints showing an elevation for the eight-story building, and stated that a building of that chacacter could be put up for $83,000 complete, ready for occupancy, but that it might cost $7,000 more, and that he was then told to go ahead and finish his plans." It was after that that the changes were made according to Nagle, although the defendant claims that the changes which were afterwards made were inconsiderable. However imperfect the plans were, they seem to have been sufficient to have satisfied the appellant if the building could be erected within the cost named, and moreover some of those which were submitted had been mislaid before the trial and hence were not in evidence. So without discussing that contention of the appellant further, we are of the opinion not only that the prayer cannot now be objected to on the ground that

there were no modifications and changes of materials and construction of the building, which increased its cost beyond the sum named, but if that were not so we could not hold that there was no evidence of such modifications and changes. The fact that the designs which were submitted (even if those used at the hearing were all, and apparently they were not) did not give the details or include working drawings does not enable the appellant to avoid the effect of there being no special exception to the prayer, for undoubtedly an owner and an architect can agree that plans can be prepared for a building described in a general way without being altogether specific as to the character of materials and construction. Then if an elevation, floor plan and "typical" plan are submitted and explained by the architect, who is instructed to proceed with them as acceptable and being accepted, he is not required or expected to provide for the very best material and very best construction, unless it is so understood between them. Of course the architect must act in good faith and will not be permitted to impose on the owner. He must provide for a substantial building but not necessarily the very best.

Nor do we think another position taken by the appellant can avail him. It is that even if it be true that, after the plans showing the character of materials and construction had been agreed upon, the appellant suggested changes and modifications in them, still the appellant was entitled to assume that such as he suggested, and the architect adopted, would not make the cost of the building exceed the price agreed upon, unless the architect notified him that such would be the case—"unless, perhaps, the changes or modifications are such that any reasonable man must know that they will increase the cost." The latter qualification of the general statement as thus made by the appellant is very applicable to this case, and there can be no doubt that when the evidence is such as there is in this record such qualification must be made to the general rule contended for by the

appellant, if that be conceded to be a correct rule of law, which we need not discuss. If that rule be adopted without a qualification of that kind, it would work great hardship and injustice upon honest architects, and furnish dishonest owners of properties means of escaping obligations to pay for services rendered in the preparation of plans. It not infrequently happens that one contemplating improvements, provided they can be made for about a certain amount, upon receiving plans and information from an architect which show the character of building that can be built for such sum, determines to have them prepared for a more elaborate, more substantial or more convenient building, and then, when they are made, asks for bids on those plans. In such a case it would be a great injustice to the architect if he must be deprived of all compensation for his work simply because he did not say to the owner that such changes would cause the building to cost more than the original sum intended, although the owner could be presumed to know it. Architects and other experts are supposed to know more in their particular lines than those who are not so engaged, but they are not supposed to have all the intelligence that belongs to mankind, and everyone is expected to use as much of it as an ordinary man is presumed to have. In speaking thus, we do not mean in any way to reflect upon the honesty or intelligence of the appellant. On the contrary his evidence is to the effect that he would not have made such changes as the plaintiffs' claim were made after the plans were accepted, and he does not pretend to be so ignorant as to suppose that such changes could have been made without materially adding to the cost of the building. But the conflict between them in their testimony was for the jury and not for us to determine. It may not be necessary, but we will recall some of the facts which would tend to show that the defendant must have known that such changes as the plaintiffs claim were made would materially increase the cost.

The case was tried by both sides on the theory that the eight-story building, as finally designed, could not be erected for less than $125,000—being $35,000 more than the original limit. Neither the plaintiffs nor the defendant contended that it could be completed for less. If it be conceded that there was such difference, as it was, any reasonably intelligent man must know that such changes would involve cost, and large costs. If it be true, as the plaintiffs contended, that one of the changes was making the building fire-proof throughout and that it was not originally so designed or intended, or if it be true that electric dumbwaiters were added and that they would cost $3,400 a pair, which is not denied in the testimony, surely the defendant, or any other man of reasonable intelligence must have known that such changes would greatly add to the cost of the building. It is not necessary to be an architect, or an expert of any kind, to know that a practically plain building "of brick, with a few simple band courses carried through horizontally," which the original design represented according to Nagle, would not cost as much as one ornamented with iron balconies and having "decorated vertical bay of lime stone, and semi-gothic," etc. So we might refer to other changes and modifications which, if made, would necessarily rapidly run into money, and which the defendant ought to have known would have increased the cost considerably beyond the original estimate. We do not overlook the fact that the defendant denies that such changes were made, but as we have said, that was for the jury—whether the modifications and changes of materials and construction were made, whether they increased the cost of the building beyond the sum of $90,000 and whether the building as originally designed could have been built for that sum were submitted to the jury by this prayer. The defendant not only did not, but doubtless would not contend, as we have intimated, that he did not know that such changes as the plaintiff's claim were made would greatly increase the cost of the building. That was not the

controversy between the parties as presented by the record, but it was whether there were such changes and modifications in the building as were originally planned and agreed upon. If the jury found there were, together with the other necessary facts, then the plaintiffs were entitled to recover; if on the other hand they found there were not, then the defendant was entitled to a verdict.

So although the prayer might have presented the real question in the case more clearly, yet when it is considered in connection with those granted for the defendant and with what the record shows was in controversy, as well as some conceded facts mentioned by us, we are of the opinion there was no reversible error in granting it. As no objections to the rulings on the other prayers were pointed out, we will affirm the judgment.

> *Judgment affirmed, the appellant to pay the costs, above and below.*