COOK MOTORS CORPORATION *v.* CASUALTY ASS'N OF
AMERICA.

1. APPEARANCE — WHERE DEFENDANT APPEARED AND PARTICIPATED
   IN TRIAL WHETHER SERVICE LEGALLY MADE WAS IMMATERIAL.
   
   Where an action against a reciprocal insurance associa-
   tion, organized under Act No. 256, Pub. Acts 1917, which
   provides that service may be made on the insurance com-
   missioner, was begun by summons served on defendant's
   secretary, and defendant appeared by attorney and de-
   manded a copy of the declaration, and, after its default
   for not pleading was entered and later set aside by stipu-
   lation, it pleaded the general issue with notice of special
   defenses and the trial began and several witnesses were
   examined, the trial court was right in declining to then
   consider whether service had been legally made.

2. PLEADING—AMENDMENT.
   
   Where a reciprocal insurance association was correctly
   named in the summons and in the opening paragraph of
   the declaration, but in several counts which followed it
   was said to be a corporation, the plaintiff was properly
   permitted to amend by eliminating such statement, on
   attention being called thereto during the trial.

3. INSURANCE—ACCEPTANCE OF PREMIUMS, ETC., ESTOPS INSURER
   FROM DENYING ITS LIABILITY.
   
   Where a reciprocal insurance association accepted the in-
   strument executed by insured and witnessed by insurer's
   agent as sufficient under the statute (part 5, chap. 2, Act
   No. 256, Pub. Acts 1917), issued its policy based thereon,
   accepted payments of premium, and, after losses had oc-
   curred, negotiated for a settlement thereof, it is estopped
   from denying liability on the ground that the officer
   signing said instrument for insured had no authority to
   do so.

4. SAME—DEFENSE OF MISREPRESENTATION OF TITLE WAIVED.
   
   Where the attention of a reciprocal insurance association
   was called to the fact that insured had paid nothing on

---

[1]Appearances, 4 C. J. § 51; [2]Pleading, 31 Cyc. p. 399; [3]Insur-
ance, 32 C. J. § 242 (Anno); [4]Id., 32 C. J. § 638 (Anno).

the insured motor trucks, and it did not cancel the policy as was its duty if it did not wish to carry the insurance, and it negotiated for a settlement of losses which later occurred with no suggestion of denial of liability because of misrepresentation as to insured's title, its right to rely on such defense was waived.

5. SAME—ASSIGNMENT OF POLICY—OWNERSHIP OF INSURED TRUCKS BOUGHT ON CONTRACT.

Where motor trucks were delivered to the buyer by the seller under a contract which provided that the buyer should carry insurance for their joint protection, and, after loss occurred, the buyer assigned its claim to the seller, upon which action was brought, insurer's claim that because the buyer did not own the trucks at the time the policy was issued nor at the time of the loss, it therefore sustained no loss, and no valid claim passed to the seller under said assignment, is without merit; and that the seller, after the loss occurred, saw fit to enter into a new contract with the buyer, reducing the purchase price of the trucks, in no way affects the liability of insurer under its policy.

Error to Wayne; Brennan (Vincent M.), J. Submitted April 28, 1927. (Docket No. 50.) Decided June 6, 1927.

Assumpsit by the Cook Motors Corporation against the Casualty Association of America on a policy of insurance. Judgment for plaintiff. Defendant brings error. Affirmed.

*Theo. F. Henry* (*Milburn & Semmes*, of counsel), for appellant.

*G. Sweetman Smith,* for appellee.

SHARPE, C. J. In 1923 the plaintiff was engaged in the manufacture and sale of motor trucks at Kankakee, Illinois. The City Cartage Company was organized to operate a line of motor trucks between

_____

°Motor Vehicles, 28 Cyc. p. 50 (Anno).

Detroit and near-by cities.   On July 6, 1923, an agreement in writing was made between these companies, in which the motors corporation agreed to sell to the cartage company 10 trucks at the price of $3,600 each, payable in monthly installments of $200, for which promissory notes bearing 7 per cent. interest should be given.   The cartage company agreed "to execute a chattel mortgage upon each of said trucks as collateral security for the payment" of said notes.   It also agreed to insure the trucks against loss by fire, theft, and collision "for the joint protection of both parties hereto as their interests shall appear," and to deposit the policies in a bank in Detroit unless otherwise agreed in writing.   There are many other provisions, of no seeming importance in the consideration of the questions presented.   Eight trucks were delivered under this contract.   On their arrival at Detroit, policies of insurance against loss or damage by fire, theft or collision were issued to the cartage company by the defendant.   On October 15, 1923, these several policies were surrendered and a new blanket policy was issued, insuring all of the trucks and some trailers the cartage company was using.

Prior to the issuance of this policy, an accident occurred, in which one truck was damaged, and the jury found that the loss occasioned thereby was $1,882.92. Damage by collision and fire after October 15th resulted in a loss, as claimed by plaintiff, of $4,030.14. From this amount certain deductions should be made for unpaid premium.   This action is brought to recover for such loss.   Plaintiff claims by assignment to it of the claim of the cartage company.   It had verdict and judgment for $5,827.76.   Defendant reviews by writ of error.

1. Jurisdiction.   Suit was begun by summons served on defendant's secretary.   The act under which defendant was organized (Act No. 256, Pub. Acts 1917 [Comp. Laws Supp. 1922, § 9100 (205)]) provides

that service may be made on the insurance commissioner.  Defendant appeared by its attorney, and demanded a copy of the declaration.  Its default for not pleading was entered, but set aside by stipulation. It then pleaded the general issue, and gave notice of special defenses.  After several witnesses had been examined, its counsel sought to raise the question of a lack of due service.  The attorney who appeared for it participated in the trial, and is acting for it on review in this court.  The trial court was clearly right in declining to consider whether service had been legally made.

The defendant was correctly named in the summons, and in the opening paragraph of the declaration.  In the several counts which followed it was said to be a corporation.  On attention being called to this fact during the trial, the plaintiff was permitted to amend by eliminating such statement.  The amendment was properly allowed.

2. Validity of Policy.  Several sections of the act under which the defendant is organized (chapter 2 of part 5) prescribe the manner in which the exchange of reciprocal or inter-insurance contracts shall be effected.  It is claimed that no sufficient instrument in writing was executed by the cartage company appointing the Michigan Casualty Corporation as its attorney in fact to exchange the policies in question with the other subscribers to the defendant company.  The instrument executed when the first policy was issued was signed, "City Cartage Co., Inc., Subscriber.  By A. G. Nadell," and that executed when what is spoken of as the blanket policy was issued was signed,  "City Cartage Co., Subscriber."  Both signatures were witnessed by H. D. Southworth, who was at such times a soliciting agent for the defendant.  It is claimed that Nadell had no authority to sign on behalf of the cartage company.  The policy first issued was canceled at the time the blanket one was issued.  The

defendant accepted the execution of these instruments as a sufficient compliance with the statute and issued its policies to the cartage company based thereon. It accepted payments of premium on such policies, and, after the losses had occurred, negotiated with the officials of the plaintiff and the cartage company for a settlement thereof. It is clearly now estopped from denying liability for the reason stated.

3. Representations. Each of the policies provided that it should be void—

"If the interest of the assured in the subject of this insurance be other than unconditional and sole ownership."

We find no provision in the written agreement under which title in the plaintiff was retained. It provides that the cartage company shall execute notes for the purchase price, and contains an agreement on its part "to execute a chattel mortgage upon each of said trucks as collateral security" for the payment thereof. It does not appear that any mortgage was executed. So far as this record discloses, the cartage company was the owner of the trucks free and clear of incumbrance at the time the policies were issued   We have not overlooked the testimony of Thomas Van Tuyl, plaintiff's manager at the time the agreement was entered into, who stated that "the trucks all belonged to the Cook Motors Corporation." He apparently overlooked the legal effect of the agreement of sale by which their rights must be determined.

Both policies contained a "schedule of statements," signed by the insured. In statement 8, under appropriate headings, the insured was required to state the date of his purchase, its actual cost, and whether the property insured was fully paid for or mortgaged or incumbered in any way. In the policy first issued, this statement was not filled in, but was marked with a rubber stamp "This Clause Void." In the blanket

policy, under the headings which appear in the statement, there was typewritten, "See Indorsement Attached. No exceptions." Our attention is not called to the indorsement referred to. No claim is made that the attention of the insured was called to this statement at the time the policy was delivered. The schedule is doubtless designed to take the place of an application for insurance.

There is no dispute about the fact that Southworth, who solicited the insurance and delivered the policies, was authorized to do so by the defendant. Its then secretary as a witness admitted such employment by it at the time the policies were issued. While he denied any knowledge of the manner in which the cartage company had procured the trucks, he wrote a letter to the plaintiff on November 24, 1923, before any liability accrued under the blanket policy, in which he said that the defendant had given the cartage company "a line of credit of $715," and that they had "met their payments fairly and promptly." It also appears that Mr. Van Tuyl, at that time plaintiff's manager, negotiated with Mr. Henry, defendant's claim agent and present attorney, about the settlement for the damage done to the truck in September, and that Henry then asked him about the contract with the cartage company, and was told that the company had a copy and he could examine it. The attention of defendant having been then called to the fact that the cartage company had paid nothing on the trucks, it was its duty to cancel the policies if it did not wish to continue to carry the insurance under the circumstances. It also appears that there was much negotiation looking to a settlement of the losses which later occurred and no suggestion of denial of liability on the part of the defendant because of the misrepresentations made in the schedule as to the title. Under our decisions, the right to rely on this defense was

clearly waived.    *Simpson* v. *Insurance Co.*, 184 Mich.
547; *Marx* v. *Insurance Co.*, 192 Mich. 497; *Blake* v.
*Insurance Co.*, 194 Mich. 589; *Gordon* v. *Insurance Co.*,
197 Mich. 226 (L. R. A. 1918E, 402); *Crossman* v.
*Insurance Co.*, 198 Mich. 304 (L. R. A. 1918A, 390);
*Baker* v. *Assurance Co.*, 214 Mich. 540.

4. Damages.    It is urged that the cartage company
did not own the trucks at the time the policies were
issued nor at the time of the damage to them, and
therefore it sustained no loss and no valid claim passed
to plaintiff under its assignment from that company.
The trucks were delivered to the cartage company
under the contract before referred to.    The record
does not disclose that this contract was abrogated or in
any way changed until after the right of action of the
cartage company under its policies had accrued.    That
the plaintiff afterwards saw fit to enter into a new
contract with this company, wherein the purchase
price of the trucks was reduced, in no way affects the
liability of the defendant under its policies.    In our
opinion the issues presented were fairly submitted to
the jury, and the verdict rendered was fully warranted
by the proof.

The judgment is affirmed.

BIRD, SNOW, STEERE, FELLOWS, WIEST, CLARK, and
MCDONALD, JJ., concurred.