MATHEW H. TAGGART, INSURANCE COMMISSIONER *v.* WACHTER, HOSKINS & RUSSEL, INC.

WACHTER, HOSKINS & RUSSELL, INC. *v.* MATHEW H. TAGGART, INSURANCE COMMISSIONER

[Nos. 13 and 14 October Term, 1941.]

*Decided July 11th, 1941.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, COLLINS, and FORSYTHE, JJ.

*H. Vernon Eney,* with whom were *Armstrong, Machen,* and *Allen, Orville Brown, Ralph P. Dunn,* and *Frank L. Shallow,* on the brief, for the plaintiff.

*Roszel C. Thomsen,* with whom was *Walter L. Clark,* on the brief, for the defendant.

BOND, C. J., delivered the opinion of the Court.

Wachter, Hoskins & Russell, Inc., is one of 4,818 residents of the state against whom assessments have been made to meet the obligations of a dissolved reciprocal or inter-insurance exchange of Pennsylvania, and this suit against it is brought in advance of others in order that questions of law presented may be settled now for all.

The plaintiff, who is the insurance commissioner of Pennsylvania, is the statutory liquidator of such organizations upon their dissolution; the defendant is a subscriber to this exchange and member of it; and the assessment has been levied under the order of a court of Pennsylvania. The Baltimore City Court rendering its verdict on a stipulation of the parties to the facts, accompanied by exhibits, allowed the plaintiff the amount of the assessment recoverable on three policies, and allowed a set-off claimed by the defendant, which gave the net verdict for the defendant for $165.12.

After pleas had been filed to the declaration, the parties agreed upon a case stated, under the provisions of section 133 of article 75 of the Code of 1939, for the settlement of questions of law in dispute, and drew up a stipulation of facts to be taken as proved except as otherwise indicated, and accompained it by numerous exhibits agreed upon. After delivery of the court's opinion on the questions, the pleadings were completed, and the case brought to an issue. The court, by agreement, then rendered its verdict on the stipulated facts, and extended judgment for the amount allowed. On cross-appeals the principal questions are of the nature and domicil of the Exchange and the bearing of the foreign laws, the effect of the judicial proceedings in Pennsylvania, the right of the liquidator to bring suit in this state, the proper period of limitations, and the right to set off in this liquidator's suit a claim of the defendant on a loss covered by its insurance in the Exchange. There are some subordinate questions.

The Keystone Indemnity Exchange, organized under the laws of Pennsylvania (Act of June 27, 1913, P. L. 634), was a reciprocal automobile insurance exchange composed of subscribers who undertook to pay each other's losses by premium deposits made according to the contract of membership, or by additional amounts paid under assessment for the purpose by a corporation of Pennsylvania, the Keystone Indemnity Company, designated attorney in fact for the membership and for the Exchange as well. Upon application by the attorney in fact this Exchange secured from the Insurance Commissioner of Maryland authority to transact business in this state, first on February 3rd, 1922, and in each succeeding year until dissolution. It was listed by the Commissioner as a reciprocal or inter-insurance exchange of Pennsylvania, with its home office in Philadelphia, also the place of the home office of the attorney in fact. A branch office, denominated the "Maryland Main Office," was maintained in Baltimore City. All policies were accepted, written and executed at the home office, and fre-

quently mailed from it to a branch office and then physically delivered to the policy holder, but no employee at a branch office had authority to accept applications or to write or execute policies. Whether the particular policies concerned in this case were delivered to the defendent by mail from Philadelphia or by mail from the Baltimore office, the parties were unable to prove, and hence have not stipulated.

First applications for the insurance were regularly accompained by written powers of attorney making the Indemnity Company attorney in fact for the subscriber, but as the first application of the defendant has not been found it cannot be said that it executed one. It was not customary to execute and file others upon renewals or extensions of the insurance. However, as the policies to the defendant all recited that the Indemnity Company had power to execute contracts with other subscribers as attorney for the holder of these indemnity contracts, and was authorized "to do any act with reference to the subscriber's liability under said indemnity contracts which the subscriber could do, with power of substitution," the possible lack of a separate written power is taken by both parties to be immaterial in the case.

The first policy of the defendant, in 1928, contained a contractual limitation of one year upon liability to assessment, and the trial court held that in an extension of the insurance for the succeeding year, executed on April 8th, 1929, this limitation was still effective, and only the assessment on policies of the three following years was allowed in the verdict. Each of the policies was to run one year from April 24th.

There is a difference in provisions for contributions to losses or assessments in these several policies. Earlier policies issued by the Exchange or company had provided for a contingent liability, over and above the premium deposits, of the same amount, but in the form used from 1924 to 1929 this provision had been omitted and a provision inserted to relieve subscribers of any payment beyond the first premium deposits. A dispute

of the power of such an organization so to limit payments, begun in 1926, resulted in an opinion of the Attorney General of Pennsylvania in 1928 that it was unlawful, and a statute of the state passed on April 9th, 1929, required that subscribers should make provision for contingent liability equal to not less than the one additional premium. In 1929, a certificate of extension of the defendant's previous policy recited that the contingent liability of the subscriber for the additional amount was insured against by the Indemnity Company as attorney in fact for the subscribers; in 1930 policy, however, written on an older form, provided only that the original premium amount should be applied to payment of losses and adjustment payments. The 1931 and 1932 policies conformed to the requirement with a provision that: "In the event that the premium herein provided for, together with the premium deposits of other subscribers, and the reserve and surplus funds maintained by the Keystone Indemnity Exchange shall be insufficient to pay the losses incurred, Assured shall be contingently liable for an additional amount, not to exceed, however, the annual premium or deposit charged herein."

The recited insurance against payment of the additional contingent liability, was lost by the insolvency of the insurer.

In March of 1933, the Exchange was found to be insolvent because of depreciation in values of securities and defalcations, and at the instance of the Insurance Commissioner of Pennsylvania, and after a hearing, insolvency was adjudged by the Court of Common Pleas of Dauphin County, Pennsylvania, and the property of the Exchange and the Indemnity Company was placed in the hands of the commissioner for liquidation of its business and affairs because of the insolvency. A subsequent order on motion of the Attorney General of that state declared the Exchange to be dissolved; and notices of the dissolution and discontinuance of the business were sent by mail to all policy holders and claimants, including the defendant, directing that claims be filed by August 10th, 1936.

These proceedings were in accord with the statute of Pennsylvania, Act May 17th, 1921, 40 P. S. Pa. Sec. 206, which provided that liquidation in such case should be made by and under the direction of the Insurance Commissioner, and that he should "be vested by operation of law with title to all of the property, contracts, and rights of action" of such an exchange.

The liquidator filed in court his report of the condition of the Exchange, and upon his petition, and after a hearing of some intervening members and subscribers other than the defendant here, the Court of Common Pleas on September 12th, 1938, ordered that each subscriber holding policies between April 9th, 1929, the date of the statute of Pennsylvania on contingent liability, and May 18th, 1933, the date of institutoin óf proceedings for winding up, should pay an assessment equal to one deposit premium. This was the whole amount of the contingent liability specified in the later policies, and the minimum prescribed in the statute. The total of claims thus far allowed or pending in the liquidation proceeding is approximately $300,000, of which $50,000 represents claims of persons or corporations in Maryland. The total assessments under the decree of the Pennsylvania court would be $2,843,233.23, and this total amount is ordered to provide for failures in collections, and for expenses. Members assessed number altogether 25,182, and of those 4818, as stated, reside in Maryland; and among them are the members with claims amounting to approximately $50,000.

The defendant claims the right to set off $750 because of a judgment against it for damages caused by its truck in a collision prior to the beginning of the liquidation proceedings. The full amount of the judgment was $1450, but a compromise agreement with the liquidator reduced the claim to set off to the $750; it was allowed by the court in that amount, against the amount of the assessment recovery of which was allowed: $584.88; and this gave the defendant the net verdict of $165.12. On the first appeal the plaintiff contests the disallowance of

the assessment on the policy of 1929, and allowance of any set-off in this suit, and on the second the defendant contests any recovery on the assessment.

Some of the questions which are raised now have been decided by the Supreme Court of Pennsylvania on appeals in that state. In two cases of *Commonwealth v. Keystone Indemnity Exchange*, 335 Pa. 333, 6 A. 2nd 821, and Id., 338 Pa. 405, 11 A. 2nd 887, it was decided that the assessment after insolvency was properly made upon policies effective after April 9th, 1929, because the statute of that date formed part of all contracts thereafter in force, that subscribers might properly be assessed to their maximum liability although the sum total of assessments would greatly exceed the claims to be paid, in order to provide for failures of some members to pay, that the expenses of liquidation must come out of the distributable assets, which include the obligations on the assessments, that the subscriber must pay the full amount of his assessment if necessary to make the assessments collected cover the claims and expenses; and that the contingent liability for the assessment is to cover as well the claims of creditors who are also members chargeable with the defalcations of the common attorney in fact. The Court of Common Pleas had previously authorized the assessment, and ordered that the policies effective after passage of the statute of April 9th, 1929, 40 P. S. Pa. sec. 964, were liable to assessments to pay twenty-five losses aggregating $17,423.51, which had occurred previously. The defendant in this suit did not appear and was not personally represented in the Pennsylvania proceedings.

This court concurs with the trial court in the opinion that no assessment could be made on the defendant's extended policy of 1929 to 1930. While the insurance under it was not to become effective until April 24th, 1929, the contract, having been completed on April 8th, a day before passage of the statute requiring provision for the additional, contingent obligation, was not affected by that statute. 2 *Cooley, Briefs on Insurance*, 1102 to 1105; *Archer v. Equitable Life Assur. Soc.*, 218 N. Y. 18, 112

N. E. 433; *Lindemann v. American Ins. Co.*, 217 Mich. 698, 187 N. W. 331. The subscriber can fix his own undertaking. *Wysong v. Automobile Underwriters*, 204 Ind. 493, 184 N. E. 783, 94 A. L. R. 826. And he cannot be subjected to an obligation in excess of that for which he has voluntarily contracted before the passage of the statute. 2 *Cooley, supra,* and cases cited.

It cannot be held that the opinion of the Attorney General that such a contractual limitation was unlawful entered into the contract actually made, and extended its obligation, nor did this effect follow the endorsement on the 1928 policy that the additional obligation in the contract—which was an error, as it was not mentioned in the contract—was insured. The opinion could not on any ground be said to have come to the notice of the subscriber in Maryland, and neither that nor the endorsement could have been part of its actual undertaking. The subscriber was in the position of one who had a contract not in strict accord with the plan, like one who had a straight life policy issued by a mutual organization. *Dwinnell v. Kramer*, 87 Minn. 392, 92 N. W. 227; *Marin v. Augedahl*, 247 U. S. 142, 147, 38 S. Ct. 452, 62 L. Ed. 1038.

The relevant statutes of the state of creation of the organization did enter into and form part of contracts after their passage, and therefore the contract of 1930, notwithstanding the omission of any reference in it to an obligation for any payment beyond that of the original premium, must be construed to embody the provision for it in the statute of 1929. *Broderick v. Rosner*, 294 U. S. 629, 55 S. Ct. 589, 79 L. Ed. 1100, 100 A. L. R. 1133; *Breakstone v. Appleton Co.*, 149 Wis. 303, 135 N. W. 853; *Cogliano v. Ferguson*, 245 Mass. 364, 139 N. E. 527; 2 *Cooley, Briefs,* 1104 etc. and cases cited. The policy of 1930 affords the defendant no individual ground for objecting to the assessment based upon it, and the three policies of 1930, 1931 and 1932 were correctly taken as the basis of allowance.

For several reasons, we think, the proceedings in Pennsylvania on the need of the assessment and its amount, and the propriety of making it when made, are conclusive in this suit in Maryland.

Without reference to the nature or proper description of the organization of the Exchange and its relationships, the facts that the subscribers had set up in Pennsylvania resources for meeting certain demands, that those resources had become inadequate, and equal treatment of the demands therefore impossible without additions, provided a case for administration and distribution by law in that state. "It matters not whether the Reciprocal was an entity separate and distinct from its members, whether it could sue or be sued in its own name, or whether the attorney in fact could speak authoritatively for it in a court of equity. The fact remains that a large fund existed, that 10,000 members were interested therein, and a court of equity having jurisdiction of the parties would see that this fund was equitably distributed." *Irwin v. Missouri Valley Co.*, 7 Cir., 19 Fed. 2nd 300, 304.

Further, the Exchange, whatever its exact description, being a creature of the statute law of Pennsylvania, had its domicil in that state. *Baltimore & O. R. R. Co. v. Glenn*, 28 Md. 287, 319, 92 Am. Dec. 688; 1 *Cooley, Briefs on Insurance*, 853. It is true that it differed in form from a corporation of which this consequence is ordinarily stated, but it has nevertheless existed by virtue of that law, and that is the essential fact. It issued policies by the authority of that law, and it is now dissolved under a statute of that state. It could be dissolved in no other jurisdiction than that of its creation. *Wilkins v. Thorne*, 60 Md. 253, 258; *Restatement, Conflict of Laws*, sec. 157. There is an entity sufficient to have a domicil. The description of a mere association of individuals exchanging contracts among themselves does not indeed, exactly fit the reality; and courts which have had to deal with similar organizations have recognized the necessity of treating them to an extent as

entities. In Pennsylvania, it seems, they are classed as "quasi corporations." *Barford v. Beaner Co.*, 11 Pa. Dist. & Co. R. 51. They have been held to be properly made parties in judicial proceedings. *Walker Co. v. National Underwriters' Co.*, 7 Cir., 3 Fed. 2nd 102; *Mountain Timber Co. v. Manufacturing Underwriters*, 98 Wash. 167, 167 P. 93; *Warfield-Pratt-Howell Co. v. Williamson*, 233 Ill. 487, 84 N. E. 706; *Cook Motors Co. v. Casualty Assoc.*, 239 Mich. 362, 214 N. W. 212. Some of the policies now concerned were signed in the name of the Exchange; by their terms they regulated the time of possible suits against the Exchange, and provided for subrogation of the Exchange to claims against third persons causing losses to subscribers. The co-operative insurance effected through the corporation as attorney in fact differs to no appreciable extent from the same sort of insurance by a department of a corporation. *Hartford Life Co. v. Ibs*, 237 U. S. 662, 35 S. Ct. 692, 59 L. Ed. 1165, L. R. A. 1916 A. 765. It would seem inevitable that the device by either method should be taken in ordinary affairs as setting up substantially the same business unit, and at least would alike have a domicil. We find in the statute laws of Maryland recognition of a distinction between domestic and foreign reciprocal exchanges. Act 1941, ch. 640. And as a foreign organization this one was given the formal permission to do business in this state. See *Yoe v. Howard Benevolent Assoc.*, 63 Md. 86, 91, 92. From this fact of domicil in Pennsylvania it follows that the laws of that state controlled the powers of the Exchange and its internal management, and all steps included in its dissolution and winding up. *Fidelity Mutual Co. v. Ficklin*, 74 Md. 172, 180, 21 A. 680, 23 A. 197.

The same result would seem to follow from the requirement arising from the reciprocal, co-operative nature of the enterprise, that all policy holders be affected alike. *Royal Arcanum v. Brashears*, 89 Md. 624, 631, 43 A. 866. This, which could be assured only by the application of the laws of one jurisdiction would be an implied undertaking of subscribers, for they intended

dealing and being dealt with on one uniform basis and all that affects the subscribers as a whole must be determined upon and ordered by one authority to accomplish that. "Indeed, the accuracy of this conclusion is irresistably manifested by considering the intrinsic relation between each and all the members concerning their duty to pay assessments and the resulting indivisible unity between them in the fund from which their rights were to be enjoyed. The contradiction in terms is apparent which would rise from holding, on the one hand, that there was a collective and unified standard of duty and obligation on the part of the members themselves and the corporation, and saying, on the other hand, that the duty of members was to be tested isolatedly and individually by resorting not to one source of authority applicable to all, but applying many divergent, variable, and conflicting criteria." *Supreme Council of Royal Arcanum v. Green,* 237 U. S. 531, 541, 35 S. Ct. 724, 727, 59 L. Ed. 1089, L. R. A. 1916A, 771; *Wardle v. Townsend,* 75 Mich. 385, 42 N. W. 950, 4 L. R. A. 511.

This implied undertaking, or this necessity, would alone answer several of the questions raised on these appeals. A subscriber knew that it was essential to the plan of the organization which he was entering that uniformity of relationship, rights and obligations be maintained from the beginning through to dissolution and final, contingent assessment, and he must be taken to have accepted as an essential condition of his membership that all steps required to accomplish the uniformity, all that affected subscribers as a whole, should be taken by the one authority. Accordingly, we find it generally held that the state of creation is that in which the necessity and amount of an assessment to pay the obligations of such a mutual organization shall be determined, and also that the determination is final. A subscriber in a foreign jurisdiction, we conclude, is bound by that determination even though not directly a party to the proceeding in which the assessment is made, because the assessment would not be practically possible if all subscribers, even

those beyond reach of service of process, need be made direct parties. "It would be quite impossible for the courts of many jurisdictions to determine, each for itself, the amount of money required to be raised upon subscriptions or premium notes to satisfy the debts of the corporation; a just distribution of the burden of indebtedness can be secured only by an administration of the corporate affairs by the courts of the state which created the corporation. Under this rule every one has his day in court. He is not personally bound by the adjudication of the foreign tribunal; it is still open to him to show that he was not a policy holder, that he had paid in full, that he had been released, that he had an off-set." But the order of the foreign court is to be taken as conclusive "as to the fact that an assessment is necessary, as to the amount of money required to be raised by the assessment, and as to the pro rata of each policy." *Stockley v. Perry*, 26 N. J. L. J. 4, 9; *Swing v. Consolidated Fruit Jar Co.*, 74 N. J. L. 145, 148, 63 A. 899; *Kennedy v. Gibson*, 8 Wall, 498, 505, 19 L. Ed. 476.

In *Howarth v. Lombard*, 175 Mass. 570, 56 N. E. 888, 890, 49 L. R. A. 301, cited in *Bernheimer v. Converse*, 206 U. S. 516, 532, 27 S. Ct. 755, 51 L. Ed. 1163, for a correct statement of the law, a stockholder in Massachusetts of a corporation of the State of Washington was sued on a liability under a Washington statute for debts of the corporation, and the decision of the Washington courts on questions connected with the assessment was held to be final. "The stockholders" said the Massachusetts court, "must be assumed to have understood the statute from the first as it has been construed by the court. They must be presumed to have agred that on the insolvency a receiver might be appointed by the court, and the affairs of the corporation administered, and the amount of its assets and liabilities determined, and the deficiency ascertained under the order of the court, and an assessment to meet this deficiency made ratably upon all who were then stockholders. * * * Under the statute, the stockholders impliedly agreed that, if their subscrip-

tions were in part unpaid when they were needed for creditors, they would pay the balance to the corporation or its legal representative, and that if more was needed they would also pay their proper share, up to the amount of their subscriptions, to the trustee of this additional fund, for the benefit of creditors. The determination of the questions involved is a part of the proceedings of the court in the administration of the affairs of a local insolvent corporation. The court of Washington, acting under its general authority in such administration, is the only tribunal which has jurisdiction to determine the amounts due creditors, and to collect and apply the assets of the corporation. The undertaking of the stockholders relates directly to the payment of amounts so to be ascertained. The ascertainment is like a common case of a judgment against a corporation, which is binding on stockholders. The members of such corporations, as well as the corporations themselves, are within the jurisdiction of the local court, so far as is necessary for the determination of the rights and liabilities of the corporation and its members among themselves. In reference to this kind of liability such decisions and orders are binding on stockholders who are not before the court otherwise than by virtue of their membership in the corporation." The assessment was "in principle, like the assessments made by the court upon the members of insolvent mutual fire insurance companies under the laws of this commonwealth, which are binding upon the members to whom no actual notice is given." And see *Cogliano v. Ferguson,* 245 Mass. 364, 139 N. E. 527, and *Bernheimer v. Converse,* 206 U. S. 516, 27 S. Ct. 755, 51 L. Ed. 1163.

It is true that the defendant is not a stockholder represented by a corporation, as in the cases here quoted. It authorized the attorney in fact to represent it in respect to all responsibilities under its contract, and it would be an unreal treatment to hold that in this scheme, in which the interests of all subscribers together were entrusted to the managing corporation, the new, personal appear-

ance of all would be required to support any of the steps necessary in a liquidation. The binding effect of the proceedings in the jurisdiction of the domicil must follow the undertaking of membership, if only because of the impossibility that there should be the liquidation contemplated by the statutes if it could not be made except upon this new personal appearance of foreign subscribers. *Glenn v. Williams,* 60 Md. 93, 117; *Lycoming Fire Ins. Co. v. Langley,* 62 Md. 196, 212. Like a bankruptcy proceeding, it is not personal. *Meek v. Centre County Co.,* 268 U. S. 426, 429, 45 S. Ct. 560, 69 L. Ed. 1028. And if the fiction of representation must be conformed to, the degree of entry found to give domicil to the organization in Pennsylvania, gives, in our opinion, representation equivalent to that furnished by a corporation to its stockholders.

The conclusion on the whole, then, is that the questions of insolvency, the appointment and right of the liquidator to take title to the assets, the necessity and propriety of the assessment made, and its amount, are all foreclosed for this jurisdiction by the statutes and proceedings in Pennsylvania. Under Art. IV, sec. 1, of the Constitution of the United States the statutes and decisions of that state are entitled to full faith and credit in this, and being so are as to the questions stated *res judicata.* The controversy is thus confined to the separate, individual defenses pleaded.

The court is of opinion that there is no obstacle to the liquidator's suing in Maryland. He is not an ordinary chancery receiver whose actions might be restricted to the jurisdiction of the order of court appointing him. *Southern Bldg. & Loan Assn. v. Price,* 88 Md. 155, 164, 41 A. 53, 42 L. R. A. 206. He is a statutory liquidator holding title; and it is generally recognized that one so holding may sue in another state, for he sues for his own. Upholding the right of a receiver appointed by a Missouri statute the Supreme Court of the United States said: "He appeared in Louisiana not by virtue of any appointment from the court, but as the statutory successor of a

corporation which the court had in a legitimate way dissolved and put out of existence. He was, in fact, the corporation itself for all the purposes of winding up its affairs." *Relfe v. Rundle,* 103 U. S. 222, 225, 26 L. Ed. 337. "In this case the statute confers the right upon the receiver, as a *quasi assignee,* and representative of the creditors, and, as such, vested with the authority to maintain an action. In such case we think the receiver may sue in a foreign jurisdiction." *Bernheimer v. Converse,* 206 U. S. 516, 534, 27 S. Ct. 755, 761, 51 L. Ed. 1163. And in another case, reversing a decision that such a receiver under the laws of Minnesota could not sue in a foreign jurisdiction, the Supreme Court added: "In these circumstances we think the conclusion unavoidable that the laws of Minnesota and the judicial proceedings in that state, upon which the receiver's title, authority, and right to relief were grounded, and by which the stockholders were bound, were not accorded that faith and credit to which they were entitled under the Constitution and laws of the United States." *Converse v. Hamilton,* 224 U. S. 243, 255, 261, 32 S. Ct. 415, 420, 56 L. Ed. 749, Ann. Cas. 1913D, 1292; *Broderick v. Rosner,* 294, U. S. 629, 641, 55 S. Ct. 589, 79 L. Ed. 1100, 100 A. L. R. 1133. And see for the general rule, *Restatement, Conflict of Laws,* sec. 567; 3 *Beale, Conflict of Laws,* p. 1570.

This right in the liquidator depends not upon a specific authorization in the Pennsylvania statute to bring suits in a foreign jurisdiction, or in his own, but upon the mere facts of title in him to the rights of action, and his statutory duty to collect the assets available to creditors. *Relfe v. Rundle,* 103 U. S. 222, 26 L. Ed. 337. With that title he would be the only one qualified to bring the suit. The creditors themselves, in the face of the Pennsylvania statute, would not be, for the liquidator has title to the rights of action. The cases cited holding that under some statutes suits for stockholders' additional liability should be brought by creditors directly, have no application when title is vested in a statutory liquidator. *Christopher*

*v. Brusselback,* 302 U. S. 500, 58 S. Ct. 350, 82 L. Ed. 388; *Colton v. Mayer,* 90 Md. 711, 45 A. 874, 47 L. R. A. 617, 78 Am. St. Rep. 456; *Hughes v. Hall,* 117 Md. 547, 83 A. 1023; *Robinson v. Hospelhorn,* 169 Md. 117, 131, 179 A. 515, 184 A. 903, 103 A. L. R. 740. The case under the Pennsylvania statute is analogous to one in which the additional liability of stockholders is an asset of the corporation. *Hughes v. Hall,* 117 Md. 547, 83 A. 1023. And see *Glenn v. Williams,* 60 Md. 93; *McKim v. Glenn,* 66 Md. 479, 8 A. 130.

The necessity that the foreign liquidator, because possessed of all records and information, should for convenience be the suitor in Maryland, need not be dwelt upon. *Stockley v. Thomas,* 89 Md. 663, 43 A. 766.

It is agreed that the limitations of the forum, Maryland, for bringing suit on the assessment, govern. *Mandru v. Ashby,* 108 Md. 693, 71 A. 312. And the time from which the limitations are to run is, in this case, the date of the decree or order making the assessment, September 12th, 1938. *Glenn v. Williams,* 60 Md. 93, 123; *Mister v. Thomas,* 122 Md. 445, 459, 89 A. 844. And see 7 *Couch, Ins.,* sec. 1668. This court has observed the distinction between limitations in suits on simple contract obligations and those in suits on statutory liabilities. *Sterling v. Reecher,* 176 Md. 567, 6 A. 2nd 237. It is sometimes a narrow one when the liability sued on is imposed by both a contract and a statute, but the stipulation here seems to remove all difficulty. The original purpose of the enterprise included a liability to contribute to pay losses, and as the policies did not restrict the losses payable to any limit on assessments it might be questioned whether a contract limit was consistent with that general purpose. *Supreme Lodge, K. P. v. Mims,* 241 U. S. 574, 36 S. Ct. 702, 60 L. Ed. 1179. The Attorney General of Pennsylvania declared that such a restriction of assessments was unlawful, and the Insurance Commissioner of the state, extended the time for complying to March 13th, 1929. It was in the situation thus arising that the statute was passed, not, as we construe

it, to create a new liability, but to provide that an existing liability should be expressed in the contract but might be fixed at or above a specified minimum, equal to the amount of the original premium. This, the court takes to intend an authorization of a restriction rather than a creation of an obligation. And from this construction it follows that for the simple contractual obligation the limitation is three years from September 12th, 1938, Code, Art. 57, sec. 1.

It is argued that the suit is brought on the order of the Pennsylvania court directing the assessment on the Exchange subscribers, and fixing the amount of it. If so, the suit being on a debt of record, the limitation would be twelve years instead of three. Code, Art. 57, sec. 3. But the court does not so construe the suit. The order in Pennsylvania, was, as has been said, not on a personal judgment against the defendant. No execution against his property could proceed upon it. The order was not a personal judgment against anybody, but only a preliminary finding of the need of collecting the available fund in addition to the reserve, and an authorization to the liquidator to collect it. *Stockley v. Perry*, 26 N. J. L. J. 4, 9; *Stone v. Old Colony Co.*, 212 Mass. 459, 99 N. E. 218. It was, like a proceeding in bankruptcy, one in *rem. Meek 'v. Centre County Co.*, 268 U. S. 426, 429, 45 S. Ct. 560, 69 L. Ed. 1028.

The defendant has also pleaded as an equitable defense that there was laches in making the assessment, and laches in bringing this suit. Aside from some other questions which this might raise, a defense of laches in making the assessment was in our opinion foreclosed by the adjudications in Pennsylvania, and the argument giving this effect to them need not be repeated. *Lycoming Fire Ins Co. v. Langley*, 62 Md. 196, 213. And the defense of laches in bringing suit cannot add a term to the statute, Code, art. 57, sec. 1, fixing the limitations at three years. The court does not find in the stipulation of facts, moreover, certain ground for adjudicating unreasonable delay under all circumstances.

In this case suit has been brought within three years from the time of the order for the assessment, and the question of limitations does not arise. In passing on it the court has departed from regular practice because of the great number of possible suits in which it may arise. It should be noted that any general rule must conform to the provision of section 171 A. article 48 A of Code, enacted by the Act of 1941, chapter 640.

Only on the question of the right of the defendant to its set-off in this suit does the conclusion of this court differ from that of the trial court. Recognizing the rule that when assets are in the custody of the law for ratable distribution among creditors a set-off cannot be had by one of the debtors, the trial court concluded that as the liquidator and the Pennsylvania court expected that enough would be collected to pay creditors in full, the rule for possible ratable payment should not be applied; and the set-off was therefore allowed. This is taking a chance on the amount of collections to be made, and to this court that does not seem to be permissible. The expectation may be realized, but there are in the case no circumstances which make payment in full certain, and so remove the possibility that a set-off might bring the defendant more than the dividend share of the collections, which is all to which he is entitled. We are not dealing with a case in which a creditor sues the debtor, *Cahill v. Original B. G. Assoc.*, 94 Md. 353, 355, 50 A. 1044, 89 Am. St. Rep. 434; *Holbrook v. Industrial Tractor Co.*, 168 Md. 468, 178 A. 236. The case is closely similar on this point to that of *Standard Printing Co. v. Bothwell*, 143 Md. 303, 122 A. 195, 31 A. L. R. 1269, in which the general rule was applied. And the general rule, we think must be adhered to.

*Judgment reversed, and judgment for the plaintiff Taggart for $584.88 and costs under the authority of the Code, Art, 5, sec. 17.*

On motion for Clarification of Opinion, the following was delivered *Per Curiam*.

Motion has been made that the court's reference in the opinion to the necessity that any general rule on limitations must conform to the provision of Section 171-A of Article 48-A of the Code, enacted by the Act of 1941, Chapter 640, be clarified to settle a question whether it was ruled that the section would apply to other suits on the assessment of subscribers to this Exchange, and might bar them.

No application of the new provision was made. It was not involved in the case and was not argued, and was mentioned in the opinion only to avoid stating a general rule on limitations without recognition of its existence for whatever application it might be entitled to. The court has not considered whether it might or might not be involved in any suits on the Exchange assessment.