### HILL v. BLANCO NAT. BANK et al.

No. 11567.

Court of Civil Appeals of Texas. Galveston.

March 16, 1944.

Rehearing Denied May 3, 1944.

Goldsmith & Bagby, of Austin, and R. L. Guthrie and Curtis E. Hill, both of Dallas, for appellants.

Russell Scott, Jo E. Shaw, and Raymond Elledge, all of Houston, Scott & Wilson and Sleeper, Boynton, Darden & Burleson, all of Waco, for appellees.

GRAVES, Justice.

"Curtis E. Hill, Receiver of Republic Underwriters, a reciprocal or inter-insurance exchange, as plaintiff, subsequently joined therein by many plaintiff intervenors who held outstanding claims against such exchange, instituted this suit against Blanco National Bank, of Blanco, Texas, and fifteen other defendants, all former subscribers thereat, in their respective individual capacities, and as representing a class, composed of all who were subscribers thereat, during the period of its alleged operation in an insolvent condition, that is, from January 1, 1936, to March 30, 1938, called the 'assessment period', and when its outstanding liabilities totaling the claimed sum of $153,886.84 arose, to recover a judgment, fixing and establishing the liability of such defendants, as well as all and each of the former subscribers, at such exchange during said period of time as a class, at a sum equal to one extra premium paid or earned during the said period of time, and fixing plaintiff's right to collect from each and every named defendant and former subscriber at such exchange during said period of time, at an additional amount of money equal to the total premiums earned or accrued on the policy or policies held by each subscriber during said period; or, alternatively, a judgment fixing and establishing plaintiff's right to collect from each and every defendant and former subscriber at such exchange, such proportionate part of such premiums based on the per centage as the total losses and expenses of said exchange is, to the total aggregate premiums paid or earned during said period of time by all subscribers; or further, alternatively, a judgment fixing and establishing the liability of all the defendants and subscribers at such exchange during the considered period of time, as principals, with respect to outstanding claims against such exchange, which arose from dealings between third parties, or persons not subscribers, on the one hand, and the said exchange, on the other hand.

"Republic Underwriters, of Waco, Texas, in 1927, was organized as a reciprocal or inter-insurance exchange, under the provisions of Chapter 20, Title 78, Revised Civil Statutes of 1925, with A. B. Shoemake as its attorney in fact, and continued to do business as such, subject to regulation by the State Department of Insurance, until March 30, 1938, when, due to the insolvent condition at that date of such exchange, at the instance of the State Department of Insurance, suit was brought by the Attorney General in the 126th District Court of Travis County at Austin, Texas, against Republic Underwriters and A. B. Shoemake, its attorney in fact, for the appointment of a receiver, the liquidation, and winding up, of the affairs of such exchange. On the same day plaintiff was appointed Receiver thereof. Under such appointment as such receiver, plaintiff, under the direction and orders of the court, proceeded with due diligence to marshal, liquidate, and distribute the properties and assets of such exchange, and upon completion thereof, there remained $153,886.84 in outstanding claims. Upon motion filed by the Receiver, the 126th District Court authorized such Receiver, plaintiff herein, to bring this suit.

"Ten defendants, and others in the position of defendants with respect to this suit, settled the respective claims against them. Six other defendants and fifty-three intervenor defendants, all of whom were subscribers at such exchange during the considered period of time, vigorously defended and contested the suit. The court below, all matters of fact as well as of law having been submitted to it, having heard the pleadings, the evidence, and the argument of counsel for all parties, rendered and entered judgment that plaintiff and intervenor plaintiffs recover nothing, and that all original named defendants, intervenor defendants, and class defendants in such suit, go hence with their costs, from which judgment plaintiff and plaintiff intervenors have prosecuted this appeal."

No findings of fact or law were either requested or filed, and the appeal is here upon the transcript and statement of facts.

This quoted statement, taken from appellant's brief, has been edited only in slight particulars, either from the record, or from the appellees' sole objection to it, to-wit: That the Exchange was not shown to have

been insolvent during all the "assessment period", but that, to the contrary, the trial court had found that it was not insolvent during the whole of that time.

That detail, however, is not considered to be a controlling point in determining the merits of the appeal.

The record is bulky and involved, the briefs are unduly long, and the discussion of the questions presented in the briefs ranges far afield; but it is thought the gist of appellant's points for a reversal of the judgment so adverse to him may be stated in this way:

(1) As the receiver of this reciprocal or inter-insurance Exchange, he was entitled to the kind of judgment against all the defendants he so sought, because the statutes he predicated his claim upon, that is, Chapter 20, Title 78, or Articles 5024 to 5033, both inclusive, Revised Civil Statutes of 1925, providing for the creation, operation, and regulation of such insurance associations, created liability against the parties he so sued for such recovery;

(2) Because such defendants, in having so become subscribers at such Exchange, expressly thereby contracted for such liability in his favor against them for such recoveries;

(3) "The quantum of indemnity granted by Republic Underwriters exchange to its insureds and the subscribers' liability therefor is not circumscribed by language in the exchange's powers of attorney and policies * * * but * * * is the greatest indemnity to its insureds (which is full indemnity) and the greatest liability therefor on the part of its subscribers (which is full liability) that can be predicated upon any of the declarations, representations, and acts of Republic Underwriters exchange made in connection with its affairs * * * because the subscribers thereat accepted the benefits of such declarations, representations, and acts of such exchange, and are estopped to, and cannot now, deny liability for same."

(4) "Such liability is inherent in, and inherently arises from, the legal organization and nature of such association, and defendants' membership therein."

(5) He was likewise entitled to recover against the defendants for the claims of nonmember third parties, who had dealings with the Exchange, in the total sum of $114,059.03, because "such defendants, with respect to such claims, are liable as principals, under the rule of law laid down by the Supreme Court of Texas, in the case of Sergeant v. Goldsmith Dry Goods Co., 110 Tex. 482, 221 S.W. 259, 261, 10 A.L.R. 742."

It is determined that none of these contentions should be sustained; that, on the other hand, the appellees, as such subscribers, had no liability as to any of the claimed assessments under, "(a) the powers of attorney, and (b) the policies issues, and (c) the applicable statutes".

Upon two determinative inquiries, however, the parties are apparently agreed:

(1) That the claimed statutory liability appellant declares upon was visited, if at all, under the enactments he invoked, that is Articles 5024 to 5033, both inclusive, or Chapter 20, Title 78, Revised Civil Statutes of 1925, which legislation was passed in 1915 and remained throughout the assessment period here involved as the law on that subject, until it was changed in 1939 by the 46th Legislature into what are now Revised Articles 5024 to 5033a, inclusive, Vernon's Ann.Civ.St. arts. 5024–5033a.

In other words, all these transactions in suit occurred when the 1915 statutes were in effect, since the insolvency of the appellant's principal, the Republic Underwriters, as he alleged, was declared by the court on March 30, 1938, approximately one year before the original statutes were so amended in 1939.

(2) That while the applicable statutes recognize and at least regulate both the public and the inter sese relations of the members of a reciprocal insurance association, the underlying nature of their liability to pay losses of the business is contractual.

Although so conceding, appellant's brief insistently stresses, as the fulcrum from which his whole argument is projected, what he advances as his two fundamental and controlling points, as follows:

"1. The subscribers at, or members of, Republic Underwriters, were each and all both the insured and the insurer, and were the association.

"2. All the declarations, representations, and acts of the attorney in fact for Republic Underwriters were the declarations, representations, and acts of its subscribers and members, i.e., its policy holders."

This court is unable to discern that these two formulae control both the statutes and the contracts here involved.

The set-up of the Exchange contemplated, and it was accordingly operated through, an attorney in fact—in this instance, Mr. Shoemake; its powers of attorney to him as such, together with the policies of insurance issued through him by it to its subscribers, constituted the contracts of insurance or indemnity which were effected and exchanged between the parties hereto; during the alleged insolvency or assessment period appellant declared upon—from January 1, 1936, to March 30, 1938—there were two of such supporting powers of attorney issued by the Exchange to Mr. Shoemake, the first dated back to February 23 of 1932 and running up to August 27 of 1936, the second dated August 27 of 1936 and running up to March 30 of 1938; these two instruments were required to be and were filed with and approved by the Board of Insurance Commissioners at Austin, hence constituted such part and parcel of all these transactions as bound all persons—including the third parties—who dealt with the Exchange.

Added to the contracts thus made up of the powers of attorney and the policies of insurance issued upon and in accordance therewith were the regulatory statutes of the State, so cited and relied upon by appellant, and in turn accepted by the appellees as the basis of their asserted immunity.

In addition, all such policies or insurance contracts issued by the Exchange over the alleged assessment period between January 1, 1936, and March 30, 1938, contained, among other clauses, this provision: "Subscribers hereat are individuals, partnerships, and corporations, which have each executed an agreement, hereby made a part hereof, which vests in A. B. Shoemake, hereinafter called attorney, power to make this contract for them."

Since both sides thus invoke and quote the 1915 statutes, as well as the pertinent parts of the two described powers of attorney, the material provisions of all are set out. The statutes were these:

"Art. 5024. May exchange contracts.—

"Individuals, partnerships and corporations of this State hereby designated subscribers are hereby authorized to exchange reciprocal or inter-insurance contracts with each other, or with individuals, partnerships and corporations of other States and countries, providing indemnity among themselves from any loss which may be insured against under other provisions of the laws, excepting life insurance."

"Art. 5025. Attorney for subscribers.—

"Such contracts may be executed by a duly appointed attorney in fact duly authorized and acting for such subscribers. The office or offices of such attorney may be maintained at such place or places as may be designated by the subscribers in the power of attorney."

"Art. 5026. Declaration of subscribers.—

"Such subscribers, so contracting among themselves, shall, through their attorney, file with the Commissioner a declaration verified by the oath of such attorney setting forth:

"1. The name or the title of the office at which subscribers propose to exchange such indemnity contracts. Said name or title shall not be so similar to any other name or title previously adopted by a similar organization, or by any insurance corporation or association, as in the opinion of such Commissioner is calculated to confuse or deceive. The office or offices through which such indemnity contracts shall be exchanged shall be classified as reciprocal or inter-insurance exchanges.

"2. The kind or kinds of insurance to be effected or exchanged.

"3. A copy of the form of policy, contract or agreement under or by which such insurance is to be effected or exchanged.

"4. A copy of the form of power of attorney or authority of such attorney under which such insurance is to be effected or exchanged.

"5. The location of the office or offices from which such contracts or agreements are to be issued.

"6. That applications have been made for indemnity upon at least seventy-five separate risks, aggregating not less than one-half million dollars as represented by executed contracts of bona fide applications to become concurrently effective, or in the case of liability of compensation insurance, covering a total payroll of not less than two thousand employes.

"7. That there is on deposit with some State or National Bank as a depository for the payment of losses not less than the sum of ten thousand dollars."

"Art. 5027. Service of process.—

"Concurrently with the filing of such declaration, the attorney shall file with the

Commissioner of Insurance an instrument in writing, executed by him for said subscribers, conditioned that, upon the issuance of certificates of authority hereinafter provided for, service of process may be had upon such Commissioner in all suits in this State arising out of such policies, contracts or agreements, which service shall be valid and binding upon all subscribers exchanging at any time reciprocal or inter-insurance contracts through such attorney. Three copies of such process shall be served, and the Commissioner shall file one copy, forward one copy to said attorney, and return one copy with his admission of service."

"Art. 5028. Statement of indemnity.—

"Such attorney shall file with the Commissioner a statement under the oath of such attorney showing the maximum amount of indemnity upon any single risk, and such attorney shall, whenever and as often as the same shall be required, file with such Commissioner a statement verified by his oath to the effect that he has examined the commercial rating of such subscribers as shown by the reference book of a commercial agency having at least one hundred thousand subscribers, and that from such examination or from other information in his possession it appears that no subscriber has assumed on any single risk an amount greater than 10 per cent of the net worth of such subscriber."

"Art. 5029. Reserve.—

"There shall at all times be maintained as a reserve a sum in cash or convertible securities equal to one-half of the aggregate net annual deposits collected and credited to the accounts of the subscribers on policies having one year or less to run and pro rata on those for longer periods. For the purpose of said reserve, net annual deposits shall mean the advance payments of subscribers after deducting therefrom the amounts specifically provided in the subscribers' agreements for expenses and reinsurance. Said sum shall at no time be less than ten thousand dollars, and if at any time one-half of the aggregate deposits so collected and credited shall not equal that amount, then the subscribers, or their attorney for them, shall make up any deficiency."

"Art. 5030. Financial report.—

"Such attorney shall make an annual report to the Commissioner for each calendar year, which report shall be made on or before March 1st, for the previous calendar year ending December 31, showing the financial condition of affairs at the office where such contracts are issued is in accordance with the standard of solvency provided for herein, and shall furnish such additional information and reports as may be required to show the total premiums or deposits collected, the total losses paid, the total amounts returned to subscribers, and the amounts retained for expenses. Such attorney shall not be required to furnish the name and address of any subscriber. The business affairs and assets of said reciprocal or inter-insurance exchanges, as shown at the office of the attorney thereof, shall be subject to examination by such Commissioner.".

"Art. 5031. Any corporation may exchange.—

"Any corporation now or hereafter organized under the laws of this State shall, in addition to the rights, powers and franchises specified in its articles of incorporation, have full power and authority to exchange insurance contracts of the kind and character herein mentioned. The right to exchange such contracts is hereby declared to be incidental to the purposes for which such corporations are organized and as much granted as the rights and powers expressly conferred."

"Art. 5032. Certificate of authority.—

"Each attorney by whom or through whom are issued any policies of or contracts for indemnity of the character referred to herein . shall procure from the Commissioner annually a certificate of authority, stating that all of the requirements have been complied with, and upon such compliance and the payment of the fees required by this law, the Commissioner shall issue such certificate of authority. Such Commissioner may revoke or suspend any certificate of authority issued hereunder in case of breach of any condition imposed by this law after reasonable written notice has been given said attorney so that he may appear and show cause why action should not be taken. Any attorney who may have procured a certificate of authority hereunder shall renew same annually thereafter. Any certificate of authority shall continue in effect until the new certificate of authority be issued or specifically refused. Such attorney shall pay as a fee for the issuance of the certificate of authority herein provided for the sum of twenty dollars, which shall be in lieu of all license fees and

taxes of whatsoever character in this State."

. "Art. 5033. When insurance law applies.—

"Except as herein provided, no.insurance law of this State shall apply to the exchange of such indemnity contracts unless they are specifically mentioned."

Likewise, the first power of attorney contained this provision: "The underwriters are organized and operating under the provisions of the insurance laws of Texas applicable thereto. Subscribers may be divided into classes, or groups, as determined by their accident experience, and the losses of all and the expenses incurred pro rated on the basis of class rates, so determined. The employees of all subscribers shall look for compensation solely to the Underwriters. Our attorney shall pay out of our funds our portion of the costs of exchanging indemnity, including any and all claims or demands, adjusted, contested, compromised, or reduced to judgment, and, in consideration of his services, shall deduct 15% of our premium deposits. Our attorney is authorized to issue contract of indemnity in accordance with schedule of warranties foregoing, or as may be alleged by declaration, which contract we agree to accept, and upon its receipt, to pay all premiums charged against us during the term of our contract of indemnity, at the office of the subscribers, at Waco, Texas, and reasonable attorneys' fees and court costs, if necessary to obtain collection, and in accordance with this instrument."

Whereas the second one, in part, provided:

"The subscribers shall have no joint or partnership liability, capital, or stock. Our attorney shall not bind us for the obligations of any other subscriber, but for ourselves alone.

"Our attorney shall pay out of our funds our proportion of the costs of securing, issuing, and exchanging insurance, including all claims or demands as adjusted, contested, compromised, or reduced to judgment; but our liability, in addition to the premiums charged in accordance with the insurance contracts issued to us, shall be limited to the surplus accumulated from our monies, as outlined herein, unless otherwise provided by law. In consideration for his services, our attorney shall deduct for himself not to exceed 10% of all

monies received on earned premiums, as a result of this agreement.

"Our attorney is authorized to accumulate and maintain a surplus from the monies received, as a result of this agreement, of not to exceed one-third of our average gross annual premium on all our insurance contracts at Republic Underwriters, which surplus shall be retained by our attorney as our part of the protection for all subscribers at Republic Underwriters, and which surplus shall be deemed an asset of the exchange."

When these statutes, powers of attorney, and insurance policies themselves are construed together, as they should be (Mitchell v. Pacific Greyhound Lines, 33 Cal.App.2d 53, 91 P.2d 176; Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S.W.2d 265; Sergeant v. Goldsmith Dry Goods Co., 110 Tex. 482, 221 S.W. at page 262, par. (4), 10 A.L.R. 742), it seems reasonably clear to this court that the subscribers at Republic Underwriters had no liability to an assessment for any character of claim, including the so-called third party claims. The trial court so held upon all the evidence before it, all disputed issues of fact being, presumptively at least, found in such way as to support that conclusion. This court has perceived no reason for not holding that to have been the only judgment it could properly have rendered upon the basis of the facts before it, which only in material substance have been attempted to be repeated here.

Such determination is thought to be supported by these, among many other authorities: Wysong v. Automobile Underwriters, 204 Ind. 493, 184 N.E. 783, 94 A. L.R. 826; Griffith v. Associated Employers' Reciprocal, Tex.Civ.App., 10 S.W.2d 129; In re Manufacturing Lumbermen's Underwriters, D.C., 18 F.Supp. 114; Sergeant v. Goldsmith Dry Goods Co., Tex. Civ.App., 159 S.W. 1036; Id., 110 Tex. 482, 221 S.W. 259, 10 A.L.R. 742; Merchants & Manufacturers' Lloyds Ins. Exch. v. Southern Trading Co., Tex.Civ.App., 205 S.W. 352; Id., Tex.Com.App., 229 S. W. 312, 313; Taggart v. Wachter, Hoskins & Russell, 179 Md. 608, 21 A.2d 141, 141 A.L.R. 751.

Stating the matter another way, it appears to this court that the Legislature in the original law of 1915, which alone is here involved, recognized that in this character of reciprocal or inter-insurance

concerns the parties, as between themselves, were left free to limit their liability to the premiums paid by them, as their quoted power of attorney provided, and in that first regulatory supervision over them expressly refrained from taking the freedom to so contract away from them; indeed, when that body came, in 1939, to amend such original statutes, it overhauled practically all of them, and provided for such an assessment liability as appellant contended for as inhering in the 1915 Act, in this provision:

"Such power of attorney or other authority executed by the subscribers at any such exchange *shall* provide that such subscriber *shall be liable,* in addition to the premium or premium deposit specified in the policy contract, to a contingent liability equal in amount to one additional annual premium or premium deposit. Such subscribers at such exchange may provide by agreement that the premium shall constitute their entire liability through the exchange while, but only while, the free surplus of the reciprocal exchange is equal to $200,000.00; provided, however, *that any domestic reciprocal organized prior to the effective date of this act, which has been and is exchanging contracts without contingent liability,* and which does not have the minimum surplus required by this section to exchange such contracts, *may continue to exchange contracts without contingent liability until December 31, 1943."*

The italics evidences this court's view that no such liability existed or was intended, as indicated, in the original law, hence was thus plainly provided in such amendment thereof. This amendment seems far from doing what appellant's brief thus says it did: "The 1939 amendment limited an unlimited liability"; on the contrary, it is not the authorization of a restriction of liability, but plainly is the creation of an obligation of liability, where none existed in the law on the same subject before it.

Despite the vigorous criticism by appellant of the Indiana court's decision in Wysong v. Automobile Underwriters, supra, that holding seems to this court not only to have been sound under the facts there involved, but also to support the trial court's judgment here, upon facts on the point at issue deemed not to be in legal effect different from those before the Indiana court. That court, in substance, thus states in different paragraphs the controlling principle underlying this court's view, to-wit [204 Ind. 493, 184 N.E. 786, 94 A. L.R. 826]:

"The power of attorney is the controlling factor. The attorney in fact cannot go beyond the powers granted in the power of attorney creating his appointment. He cannot bind the subscribers beyond the limitations expressed in the power of attorney. The limitation set out in each subscriber's power of attorney is known to each subscriber and he also knows that the same limitation is set out in every other subscriber's power of attorney. Each subscriber knows that, in case the amount he has agreed to pay in and the amount other subscribers have agreed to pay is not sufficient to pay his loss, there is no further liability on the part of the subscribers to pay additional sums over and above what they have contracted to pay. The subscribers have the right to contract among themselves and fix the limit of their liability unless there is some law preventing it, and we are unable to find any holding that the subscribers have not the right to fix the limit of their liability as among themselves, and as to each other. Reciprocal or interinsurance is not a statutory entity, but only regulated by law.

"It is by private contract that the relations created among and between the subscribers are fixed and determined. And the policy issued by the attorney in fact and the power of attorney executed by each subscriber determines the rights and liabilities of the subscribers between themselves, provided that said power of attorney and the policy issued do not contravene the law of the State. *. * *

"The plan of reciprocal or interinsurance calls for a limited liability, and, in our judgment it is not in conflict or inconsistent with the law of this state. The limitation of liability, therefore, to the initial deposit and application fee, is valid, and the policy is nonassessable as between the subscribers."

In view of these considerations, it seems tangential for appellant, after apparently conceding, first, that appellee-subscribers or members were both the insured and the insurers—exclusively constituting the Exchange—and, second, that "the nature of their liability is essentially contractual", to yet contend that "the subscribers' liability therefor is not circumscribed by language in the exchange's powers of attorney and policies", when, as indicated, these con-

stituent elements of all their contracts had been so filed with and adopted by the Board of Insurance Commissioners of the State of Texas, in accordance with what that Board officially determined the quoted law required.

Neither, it is thought, did the Supreme Court of Texas in Sergeant v. Goldsmith Dry Goods Co., 110 Tex. 482, 221 S.W. 259, 10 A.L.R. 742, hold differently from this court's conclusions as to the nonliability of appellees to appellant's claims—either as affects members or third parties—on the legal equivalent of the same state of facts.

In that case, after first determining that there was no inter sese liability for assessments, the Supreme Court held that the subscribers were liable, as principals, to third parties on contracts of the attorney in fact; but there plainly exists the distinction between the situation here and that presented in the Sergeant case, in that the Goldsmith Company had been organized and operating before the enactment of the reciprocal law, in the year 1915, hence there was no statutory requirement that the power of attorney be filed with the Board of Insurance Commissioners; wherefore, the public was not charged with knowledge thereof—all contrary to the undisputed showing in the case at bar.

■ Here such a statute had been enacted, the authority of the agent was required to be in writing and officially filed in the Insurance Department, all of which had been complied with, hence the public generally and such third parties dealing with him especially were charged with knowledge of his limitations. See 2 Corpus Juris, p. 565, § 207, and footnote cited authorities; 2 C.J.S., Agency, § 92; also Griffith v. Associated Employers' Reciprocal, Tex.Civ.App., 10 S.W.2d 129, supra.

These conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.

### On Motion for Rehearing.

Appellant in his motion reiterates his contention that R.S. Articles 5024 to 5033, inclusive, impose assessment liability on the subscribers at the reciprocal exchange here involved. Without extended discussion, this court is constrained to adhere to its former opinion holding to the contrary.

Since that opinion was handed down on March 16 of 1944, the Austin Court of Civil Appeals, in Richardson et al., Appellants, v. Kelly, Receiver (Herbert Marshall, Successor), Appellee, 179 S.W.2d 991, refused to set aside a prior judgment of the trial court in that cause holding the subscribers subject to an assessment liability in that instance.

The Richardson case, however, was a bill of review proceeding to set aside an assessment judgment, after the term at which it had been rendered had expired; hence, at base, it involved structurally different issues from those presented in this cause.

Moreover, the opinion discloses that the powers of attorney, or contracts, for reciprocal insurance there under review were also materially dissimilar to those presented by this cause; wherefore, upon the whole, nothing in conflict with this court's former conclusions in this cause, stemming from facts not in legal effect different from those here obtaining as to what the contracts and the acts of the parties under them were, has been made to appear.

Indeed, as its original opinion discloses, the powers of attorney, which were filed with and approved by the Board of Insurance Commissioners of Texas, which constituted the contracts here, were exclusively used during the insolvency period, and they contained contractual limitations against the assessment liability claimed.

Both the cause at this bar and the Richardson cause were decided by the same trial court—the 98th District Court of Travis County—and that court evidently perceived no conflict between this holding in the one that assessment liability was imposed, while in the other that it was not—presumably upon the same conclusion this court now reaches, that the underlying facts required such differing determinations.

Unconvinced of error in the former judgment, the motion for rehearing will be refused.

Motion refused.