(Decided June 29th, 1898.)

---

# THE SOUTHERN BUILDING AND LOAN ASSOCIATION OF KNOXVILLE, TENN. *vs.* JOHN PRICE.

*Building   Associations— Withdrawal   of   Stock— Foreign Receivers—Attachment—Impossibility of Performance —Bill of Particulars—Common Counts in Assumpsit.*

Plaintiff was a stockholder in a Tennessee building association and gave notice of the withdrawal of his stock.  A by-law provided that " withdrawn stock will be paid for in the order in which notice is given, but the Association shall not be required to use in the payment thereof, in any one month, without the consent of the Board of Directors, more than one-half of the receipts of the loan fund for that month." After plaintiff's notice of withdrawal was given, the association was placed in the hands of receivers, by a decree of a Tennessee Court, and ceased to do business.  Plaintiff then laid an attachment on the property of the association in this State to recover the amount of his withdrawn stock.  *Held,* that after notice of withdrawal, plaintiff became a creditor of the association for a fixed sum and that the decree of the Tennessee Court, appointing receivers, terminated and rendered impossible of performance the contract contained in the by-laws regarding the fund from which withdrawn stock was to be paid, and entitled plaintiff to proceed by attachment, in this State, as a creditor.

The fact that a contract made by a foreign corporation becomes impossible of performance on account of a decree of the Court of its domicil, is no excuse in the Courts of this State for its failure to perform.

If at the time of making a contract, the thing promised be possible in itself, it is no excuse for non-performance that its performance became subsequently impossible from causes beyond the control of the promisor.

When the declaration is on the common counts and a bill of particulars, filed after demand, shows that there was a special contract between the parties, the plaintiff is entitled to recover on the common counts if the special contract was fully performed by him.

No objection to the sufficiency of a bill of particulars can be made after a plea to the merits.

Appeal from the Circuit Court for Allegany County.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, BOYD and PEARCE, JJ.

*John Ridout* and *Benjamin A. Richmond,* for the appellant.

The bill of particulars declared for withdrawals upon notice, but omitted to state anything about this proviso in the by-law which only made the withdrawals available on certain conditions. The plea sets up this proviso and states that the plaintiff being a stockholder was bound by it, and that under this by-law the withdrawing members were only entitled to be paid in the order of notice given, and only then to the extent of one-half of the net receipts of the loan fund down to the time of suit brought, and that at the time of plaintiff's notice there had been prior notices of withdrawal which consumed much more than the whole fund applicable as aforesaid to withdrawals, and that plaintiff never obtained the consent of the board of directors. As the demurrer admitted the truth of all the allegations of the plea, the

lower Court was clearly right in holding the plea a good plea in bar to the plaintiff's claim, as disclosed by his bill of particulars. His declaration made claim against the defendant as a stockholder, and only because he was a stockholder, based upon withdrawal notices allowed under a by-law of the defendant. Being a stockholder, and claiming under one by-law of the company, he was of course bound by all other by-laws of the company in force at that time, and the plea states that under this other by-law, before the plaintiff's claim matured or became suable, some other thing must have occurred, and that they did not occur according to this by-law down to the time of suit brought. The plea therefore calls for a tender of an issue of fact as to whether or not these things had occurred or else some sufficient legal reason available to the plaintiff showing why they had not occurred. *Heinbokel* v. *Building Assn.*, 58 Minn. 340; *Engelhart* v. *Building Assn.*, 148 N. Y. 281; *Christian's Appeal*, 102 Penn. State 189; *Texas Building Assn.* v. *Kerr*, 13 Southwestern Rep. 1020; *Amer. & Eng. Encyc.*, Title Withdrawals, Vol. 4, p. 1046; *Chapman* v. *Young*, 65 Ill. App. 131.

The demurrer to the fifth replication presents the important question in the case. To avoid the effect of the proviso upon payment after withdrawal notice, as provided by the aforesaid by-law, the plaintiff alleges that on the 16th day of April, 1897, the appellant company, a Tennessee corporation was by a decree in chancery of said State placed in the hands of receivers, who took possession of all defendant's assets within the jurisdiction of said court, and that appellant then entirely ceased to do business under its charter, by-laws and contract with plaintiff, and ceased to have any receipts applicable to the payment of withdrawing stock, and that therefore the plaintiff's claim under its withdrawal notice became at once due and demandable. In other words, that although the appellant and appellee were both bound by their contract, which was still an executory one and in process of performance on both sides, yet that because the State of Tennessee, through its Chancery Court,

laid its strong hand upon both parties and stopped the further execution of the contract, the appellee can avail himself of this misfortune of the company of which he was a stockholder, declare the contract at an end, assume that his debt is due, notwithstanding his agreement that it should not be due till the happening of certain contingencies, and then seize the property of the company and thus get in ahead of the creditors of the company as well as his fellow-stockholders, who were in like position with himself.   If this cunning vigilance can be availed of by the plaintiff, under the forms of law, to seize, where justice and his contract would seem to require that he should forbear, it certainly presents a startling and stimulating example of the application of the rule, " *Vigilantibus et non dormientibus jura subveniunt,*" and wholly unsettles the doctrine on the subject of receivership.

Here it appears by the replication the appellant was placed in the hands of receivers on the 16th day of April, and on the 19th appellee assumes his debt to be due by reason of this decree and at once seizes the property of the defendant.   Did the decree work any such effect?   This is practically the sole contention in the case.   If it did, the replication is good and the plaintiff could proceed with his suit; if it did not, then according to our fifth plea the debt was not due at the time of suit brought, and the replication was bad.   The authorities on this point are not numerous, but the case of *People* v. *Globe Mutual Life Ins. Company*, 91 N. Y. 174, seems to be directly in point.

*W. C. Devecmon*, for the appellee.

The replications were framed upon the theory that the by-law mentioned in the plea was binding on the plaintiff, and that it constituted an agreement on his part that he would, after he had given his notice of withdrawal and done all that was required on his part to entitle him to payment for his withdrawn stock, wait for payment until the defendant had collected money sufficient therefor in due course of its business; in other

words that the by-law amounted to an agreement on the part of the plaintiff, that his claim should not be due and payable until the defendant had collected its funds in due course.   It is to be noticed that the *amount* owing to the plaintiff was subject to no contingencies that could or might happen to defendant after the thirty days had elapsed from the date of the withdrawal notice; the amount was fixed and certain, depending alone on the condition of defendant's assets when the notice matured, *i. e.* thirty days after it was given; the *time* of payment alone was contingent.   This by-law permitting the plaintiff to withdraw, but requiring him to wait for the payment of his claim until defendant had collected sufficient money therefor, was certainly binding on the plaintiff; it constituted part of his contract with the defendant.   *Endlich on Building Associations,* sec. 141, says: " A rule upon the faith of which a member has contracted with the society becomes part of the contract between them."   See also *Ibid,* sec. 106.   Now, while under the by-law the plaintiff expressly agreed to wait for the payment of his claim until defendant had collected the money as therein provided, by *implication* the defendant on its part agreed that it would collect it, and that it would continue to do business so that it could collect it.

Now it is manifest that this correlative obligation on the part of defendant must be implied from this by-law; otherwise the by-law would in effect say " members may withdraw at any time upon giving thirty days notice, but the association will pay withdrawn stock whenever it sees proper, or never if it does not choose to."   Such a construction of the by-law could not have been within the intention of the parties.   In the case of a borrowing member of an association, that is a mortgagor, it has been expressly decided that his contract with the association is made on the implied understanding that the association will continue in business.   When, therefore, it is put in the hands of trustees, or receivers, it has violated its contract and the borrowing member is thereby relieved from performance of the contract on his part.

*Low St. Build. Ass'n* v. *Zucker*, 48 Md. 448, and this is now the general doctrine. *Endlich on Building Ass'ns*, 523, 525.

It would be most inequitable to oblige one party to continue to perform his part of the contract when the other party has become incapacitated from carrying out the provisions made in the same contract for securing the performance thereof on his part. *Cook* v. *Kent*, 105 Mass. 254. But even if the law will not impose by implication these correlative obligations on defendant, the case at bar comes up for review by this Court, not on the construction of this by-law by the Court below, but on the sufficiency of the averments of the replications. These replications allege that the defendant *did* agree with the plaintiff to collect these funds each month, and *did* agree to continue in business so that it could collect the same. By traversing these allegations the defendant could have had the Court below to pass upon the meanings of the by-laws; and could have had the Court say whether there was an implied obligation on defendant. But the defendant demurred, thereby admitting that *it did in fact* agree with the plaintiff as alleged, and that in fact it violated and broke that agreement.

The question here is not what class of creditors the plaintiff may belong to, but whether he is a creditor at all. There is no proof in the case that defendant has any outside creditors. If the plaintiff is a creditor *at all* he has a right to sue in this State and attach defendant's property here, and it is the policy of the law of Maryland to uphold the attachment and subject the defendant's property in this State to the payment of its creditors herein. *Failey* v. *Fee*, 83 Md. 83, 98; *Day* v. *Postal Tel. Co.*, 66 Md. 360; 8 *Am. & Eng. Ency. of Law*, 405, 406, 407. Now that the plaintiff is a creditor of defendant is established by the pleadings in the case, and defendant is estopped from denying it. But, independent of any question of estoppel, it seems clear that the plaintiff must be considered a creditor. He is certainly not a stockholder, for he has assigned and surrendered his stock to the association. If he were to file his claim

with the receivers he would prove it for the amount found to be due him under the issue raised on the third plea in this case, that is to say, for the value of his assigned stock according to the assets of the association on the thirtieth day after the withdrawal notice given by the plaintiff. If the association suffered losses thereafter or made profits thereafter, the plaintiff participated in neither.

FOWLER, J., delivered the opinion of the Court.

The plaintiff was a stockholder of the Southern Building and Loan Association of Knoxville, Tennessee. Whether he is a resident of that State or of Maryland does not appear, nor has any question been made as to the effect the fact of his residence in the former State, if it be a fact, might have upon any of the questions here presented. *Bagby* v. *Atlantic, Miss. & Ohio R. R. Co.*, 86 Pa. St. Rep. 291; *High on Receivers*, sec. 241.

This action was commenced by attachment on original process issued at the instance of the plaintiff out of the Circuit Court for Allegany County, but the defendant corporation appeared, and the questions we are to decide arose entirely upon the pleadings in the short note case. While there appears to be some confusion as to the condition of the pleading as set forth in the record, it was conceded by counsel that the main and controlling question intended to be presented arises upon the demurrer to the fifth replication to the fifth plea. The plaintiff withdrew his stock on the 21st of December, 1896, and the defence set up by the fifth plea is that neither at the time such notice was given nor at any time before suit was brought was there any fund in the defendant's hands applicable, under its by-laws, to the payment of the plaintiff's claim.

The plea avers that the plaintiff was a stockholder of the defendant corporation and subject to its by-laws, one of which was as follows: "Withdrawn stock will be paid for in the order in which notice is given; but the Association shall not be required to use in the payment thereof in any one month, without the consent of the Board

of Directors more than one-half of the net receipts of the loan fund for that month." The plea also alleged that according to said by-law the plaintiff was only entitled to be paid upon his alleged withdrawal, by the defendant in the order in which said notice of withdrawal had been given, and only then to the extent of one-half of the net receipts unless by consent of the board of directors, and that at the time of said withdrawal notices, other withdrawals had been made by other members to such an extent in prior order as to consume much more than the whole fund applicable as aforesaid to the payment of the plaintiff's withdrawal stock, and that the plaintiff never obtained the required consent of the directors. To this plea the plaintiff replied by its fifth replication, in substance, that it was true the plaintiff was a stockholder, as alleged, until he had given notice of withdrawal, but that when such notice was given, received and accepted by the defendant, the plaintiff became a creditor of the defendant for the amount owing on said withdrawal stock, under the charter and by-laws of defendant, subject, of course, to the provisions of such charter and by-laws, and that the amount claimed on his withdrawal stock was not to be demandable until after the payment of withdrawing stockholders who had given prior notices, and that the defendant could not be compelled to use in the payment of said claim more than one-half of the net receipts of the loan fund each month; that such provisos, however, were made upon the condition and with the understanding that the defendant would continue its business according to its charter and its contract with the plaintiff so to do, and that on the 16th of April, 1897, being a Tennessee corporation, it was by a decree of the Chancery Court of that State, placed in the hands of receivers, that such receivers took possession of its assets in Tennessee, and that the defendant thereupon ceased to do business in the manner provided by its charter and by its contract with the plaintiff, and ceased to have any receipts whatever applicable to the payment of withdrawn stock. To this replication the defendant demurred.

The contention of the plaintiff is that upon the facts set forth in this replication the amount claimed by the plaintiff became legally due and demandable, and was demandable when and before his attachment was issued —that is to say, from and after the passage of the decree in Tennessee placing the defendant in the hands of receivers, when it ceased to have any assets applicable to the payment of the plaintiff's claim, and became unable to perform its contracts and promises.   The question thus presented is a narrow one, but quite important. What is the effect of the decree of the Tennessee Court, the appointment of receivers thereunder and the taking possession by them of the assets of the defendant in that State?   This, it is conceded, is practically the sole question in the case.

The fifth replication alleges that the contract which existed between the plaintiff and defendant by operation of the charter and by-laws of the latter was not only made subject to the condition that the defendant should continue to perform its functions and to carry on its business according to its charter but that it had contracted with him so to do.   Hence it is contended by the plaintiff that having done all that he was or could be called on to do by the by-laws and the contract made thereunder, namely, having given the requisite notice of the withdrawal, the fixed sum—the amount he had paid in, became due and payable upon the passage of the decree in question.   The defendant's excuse for its failure to perform its contract is that the passage of the decree has made such performance impossible, inasmuch as it cannot make the necessary collections, all its operations having ceased when it was placed in the hands of receivers.

It is familiar law that " if at the time of making the contract the thing promised be possible in itself, it is no excuse for non-performance that its performance became subsequently impossible from causes beyond the control of the promisor."   *P. R. R. Co.* v. *Reichert*, 58 Md. 261; *Kribs* v. *Jones*, 44 Md. 396; *Benson* v. *Atwood*, 13 Md. 20; *Walker* v. *Cockey*, 38 Md. 75.   In accordance with

this contention the plaintiff at once brought his suit. On the 16th of April, 1896, the decree was passed and three days thereafter he proceeded against the defendant in this State. As we have already seen his debtor was without power to pay the debt, and it can hardly be said that the plaintiff should be required to wait until some indefinite time in the future when the defendant might, perhaps, be rehabilitated. If, as we have said, there was a debt of an ascertained amount due by the defendant to the plaintiff, the relation of debtor and creditor existed, we do not understand this to be seriously questioned. One of the by-laws provides that shares may be withdrawn at any time, and the holder will be entitled to receive the amount paid in on said shares; but by the terms of another by-law this fixed amount is to be paid not immediately but upon certain notice and when certain collections have been made. In other words, while it is practically conceded that the plaintiff is a creditor, it is contended his debt was not due when he sued, and that although he had given the required notice, and had fully performed his part of the contract, he was bound to wait for the defendant to do what it is conceded it was unable to do. As we have said, its inability to perform its contract does not relieve the defendant, and in our opinion the new situation fully justified the plaintiff in proceeding as he did, at once upon the passage of the decree and the appointment of receivers.

But the course pursued by the defendant nullifies, it is said, the Tennessee decree. Not so, however, for that decree has no extra-territorial force. It is true that foreign receivers appointed by the decree of the Court of another State will sometimes be allowed to bring suits in this State, provided such suits do not injuriously affect the claim of citizens of our own State. *Day* v. *Tel. Co.*, 66 Md. 354, and the recent case of *Castleman* v. *Templeman*, 87 Md. 546, in which the authorities are collected and reviewed. It does not follow, however, that because the Tennessee receivers may be permitted to sue here that the creditor must fold his hands and wait until, perhaps, the only available asset here has

been converted into money and the fund taken to Tennessee. As was said in *Low St. Bldg. Asso.* v. *Zucker,* 48 Md. 448, the association there as here having been placed in the hands of receivers, " The circumstances of the association, therefore, and its inability to carry out in good faith the contract with the mortgagors, must terminate the contract as originally contemplated." And while therefore, the debt due cannot be paid in the manner stipulated, it is none the less a debt.  On the issue joined in this case on the third plea, the verdict and judgment establish the amount due the plaintiff after deducting all losses of the association which his withdrawn stock was subject to, and in our opinion it is clear that when the association became unable longer to carry on its business, the debt to the plaintiff became then due and demandable.   If he is to wait, how long is he to postpone his action?   The only answer to this is if he waits at all he must wait forever, and therefore he should be allowed to proceed at once on the passage of the decree.   It is apparent that if the defendant is to be bound by that part of the contract which it is  contended requires him to wait until the defendant collects money to pay his claim it will be equivalent to denying him any relief whatever except such relief as he might get by applying to the Tennessee Court having jurisdiction over the receivers.   But the fact that he might have a remote chance to prosecute his claim in Tennessee, is no reason why he should be deprived of the advantage he has gained by his suit in this State, provided his debt was demandable at the time his suit was instituted, and of that, as we have said, we have no doubt.

In opposition to this view the defendant relied upon the case of *People* v. *Globe Mut. Life Ins. Co.,* 91 N. Y. 174.   The facts of that case show that the company had employed a general agent under a contract by which he was to receive a certain annual salary for five years. During the term of his employment receivers were duly appointed to take charge of the property and assets of the company, and his employment necessarily ceased before the expiration of the contract period of five years.   It was held in that case that the agent, while he

could not recover damages for the breach of the contract, because there was no such breach between him and the company, inasmuch as they had both been prevented by the injunction and appointment of receivers from fully performing it; yet he was allowed to recover his " actual earnings to the date of the dissolution." In the course of its opinion the Court said: " As a condition precedent, Mix, the agent, was bound to show both ability and readiness to perform his part. He could . do neither. Performance by him had become illegal." But in the case before us there is no such state of facts. The plaintiff had done all he could be required to do, and it was the defendant, the other party to the contract, who failed or was unable to perform its contractual obligations. But the replication alleges that it was part of the contract that the association would collect the money to pay his claim, and the subsequent impossibility of performance affords no protection or excuse. It may be observed that the plaintiff in this case is seeking to recover only the actual amount claimed to be due him, and not damages for the breach of the contract. This is just what was held in the case of *People* v. *Globe Mut. Ins. Co.*, *supra*, that the claimant there was entitled to recover.

Finally, some doubt was suggested as to the sufficiency of the declaration. The action is in assumpsit, and the declaration contains only the common counts. On the demand of the defendant, the plaintiff filed a bill of particulars, which disclosed a special contract, but failed to state what it was, except to say that the sum claimed was due for withdrawal from membership or the withdrawal of stock held by him, " as per contract with said Association." It is contended that as the contract is based on a by-law of the association the declaration should have set forth " the by-law, giving the right to withdraw, compliance with all its requirements " and especially the condition of things which under the proviso entitled him to be paid the amount claimed. But it is well settled that even if there be a special contract and the plaintiff has fully performed, he may declare on the common counts. In the case of *Fairfax Forrest Co.* v.

*Chambers,* 75 Md. 604, the bill of particulars as here, showed there had been a special contract, the common counts were held sufficient, the proof showing the plaintiff had fully performed his part.   In that case we said " the bill of particulars did not prevent the plaintiff from recovering under the common counts, if the special contract was executed, or in other words, if the services had been fully rendered, and nothing remained to be done but the payment of the money by the defendant."  Many other cases could be cited in support of this general proposition.   Inasmuch as there are no bills of exception in this record, the questions being presented on demurrer, we are not informed what the evidence was in regard to the performance of the contract by the plaintiff here.   But we must assume that there was such proof before the Court, because it was necessary to sustain the verdict.   In several of the defendant's pleas on which issues were joined and found for the plaintiff, the defendant set up the special contract and alleged facts which show that the plaintiff did all that the contract required him to do, but alleged that under the by-law in question the plaintiff's claim was not payable, because no funds available for that purpose had been collected at the time the suit was brought.   It may be assumed, therefore, that the necessary evidence was given, and if so, there can be no objection to the declaration. *Fairfax Forrest Co.* v. *Chambers, supra.*

If the bill of particulars was objectionable it should have been excepted to, and the Court should have been asked to require the plaintiff to amend it, before pleading to the merits.   It is too late to make such objection after so pleading.  *2 Poe Plead. & Prac.* (3 ed.), sec. 119.

We have not commented on *Engelhardt's case,* 148 N. Y. 281, and a number of others to the same effect cited by the defendant, because we think they have no application here, for the reason that the corporations mentioned in those cases were going concerns and engaged in the exercise of their corporate functions.

*Judgment affirmed.*