Bohlinger v. International Workers Order

*Paul E. Hutchinson, Leonard L. Scheinholtz* and *Reed, Smith, Shaw & McClay,* for plaintiff.

*Hymen Schlesinger,* for defendant.

SOFFEL, J., November 13, 1956.—Alfred J. Bohlinger, Superintendent of Insurance of the State of New York, as liquidator of International Workers Order, Inc., plaintiff, brought suit in assumpsit against International Workers Order, Branch 3006, Fred Storoz, Andy Hrmiko and Matt Dockman and Peoples National Bank of Tarentum, defendants, to recover the sum of $1,462.35, with interest from January 19, 1954.

Defendants have filed preliminary objections to plaintiff's complaint, alleging:

1. The complaint does not set forth a cause of action against any of defendants.

2. The individuals named as defendants therein are not shown to be liable to plaintiff under any theory of law.

3. There is no allegation in the complaint that there is any money on deposit with the said bank which belongs to the parent body of International Workers Order, Inc.

4. There is nothing to show that there is any liability whatsoever due and owing to the said parent body for any funds or property of any kind.

5. There is nothing to show what funds, if any, there were on deposit in said bank belonging to said parent body before or after its dissolution, the origin of said funds, to whom said funds actually belonged, the purpose of maintaining said funds on deposit or any other basis of liability.

6. There is nothing to show that section 66 of the bylaws is applicable to the situation.

7. There is no allegation of any unpaid debts due and owing by the lodge or any individual named as a defendant.

For the purpose of this argument, these are the essential facts:

1. Alfred J. Bohlinger is the Superintendent of Insurance of the State of New York.

2. The International Workers Order, Inc., was a corporation organized and existing under the Insurance Law of the State of New York and subject to its provisions.

3. The International Workers Order, Inc., was dissolved by the Supreme Court of New York on August 21, 1951, which dissolution was subsequently affirmed by action of the Supreme Court of the United States in denying a writ of certiorari.

4. Alfred J. Bohlinger, Superintendent of Insurance of the State of New York, was appointed by the Supreme Court of New York statutory liquidator of International Workers Order, Inc., by order entered August 24, 1951, and, as such, is the successor of the dissolved corporation, entitled to its assets, wherever situated.

5. Defendant, International Workers Order, Branch 3006, was a subordinate lodge of the International Workers Order, Inc., maintaining offices in the City of Pittsburgh, County of Allegheny and State of Pennsylvania.

6. Defendants, Fred Storoz, Andy Hrmiko and Matt Dockman were the officers of International Workers Order, Branch 3006, serving respectively as president, secretary and treasurer.

7. Defendant, Peoples National Bank of Tarentum, is a national bank existing under the laws of the United States.

8. On January 19, 1954, said bank had on deposit a fund in the sum of $1,462.35 deposited by International Workers Order, Branch 3006.

9. On January 19, 1954, plaintiff made demand upon said bank to turn over to him the funds on de-

posit with said bank standing in the name of International Workers Order, Branch 3006.

10. On August 31, 1954, the effective date of the liquidation of the parent corporation, certified copies of the order of liquidation (Exhibit C), and the order of August 24, 1951, dissolving said corporation (Exhibit A), were served upon said bank by plaintiff and demand was made that the aforesaid funds standing in the name of International Workers Order, Branch 3006, be turned over to plaintiff.

11. The constitution and bylaws of the International Workers Order, Inc., which are attached to and made part of the complaint (Exhibit D), provide, inter alia, as follows:

"Section 66. If a lodge votes to dissolve or if it is dissolved by order of the General Counsel, then all of its property, funds, documents, supplies, seals, records, etc., of whatsoever kind, nature or description, all of which are hereby declared to be the property of the General Office of the I. W. O., shall be immediately forwarded to the General Secretary-Treasurer."

12. On March 1, 1955, Peoples National Bank of Tarentum presented its petition for interpleader and discharge from liability, which was granted by the court on payment of the sum of $1,462.35 to the prothonotary of Allegheny County.

The basic issue in the case is whether, under the laws of the State of New York, plaintiff, as statutory liquidator of International Workers Order, Inc., is entitled to the fund in question.

The preliminary objections raise these questions:

1. What law governs these proceedings, the law of New York or Pennsylvania?

2. Does this action constitute a forfeiture of property and violate public policy?

3. Is plaintiff a receiver and, if so, must an ancillary receiver be appointed in Pennsylvania?

4. Has plaintiff properly plead the New York law?

We shall consider these questions as stated:

First. What law governs the rights and liabilities of the parties to this action?

We are of the opinion that these proceedings are governed by the law of the State of New York.

(a) The International Order was legally dissolved by the State of incorporation, New York.

It was a corporation organized and existing under the Insurance Law of the State of New York and subject to its provisions. The International Order was dissolved by order of the Supreme Court of the State of New York in 1951 on the grounds that further transaction of business by the International Order would be hazardous to its policyholders and its creditors within the meaning of section 511(e) of the Insurance Law of the State of New York, in view of the International Order's course of political action, financial and otherwise, in support of the Communist Party and its policies: Application of Bohlinger, 109 Misc. 941, 106 N. Y. S. 2d 953 (1951). The International Order was represented in the dissolution proceedings by counsel, and certain individual members of the order, representing the International Workers Order Policyholder Protective Committee, intervened and were also represented throughout by the counsel.

The liquidation provisions of the court order were stayed to permit the International Order and the policyholders protective committee to appeal. The decision and order of the trial court were vigorously contested by the International Order and the policyholders protective committee all the way to the United States Supreme Court. The Appellate Division of the Supreme Court of New York unanimously affirmed the decision of Justice Greenberg (In re International Workers Order, Inc., 280 App. Div. 517, 113 N. Y. S. 2d 755 (1952)), and the order of the Appellate Divi-

sion was unanimously affirmed by the New York Court of Appeals in a per curiam decision: Appeal of International Workers Order, Inc., 305 N. Y. 258, 112 N. E. 2d 281 (1953). Application for certiorari was made to the United States Supreme Court and was denied: International Workers Order, Inc., etc., v. New York, 346 U. S. 857, 98 L. Ed. 409 (1953), rehearing denied, 346 U. S. 913, 98 L. Ed. 409 (1953).

(b) The adjudication of the State of incorporation is binding on a Pennsylvania court.

The Restatement of Conflict of Laws, §158, provides:

"Recognition of Dissolution or Suspension of Powers.

"If a corporation is dissolved by the state of incorporation, another state will recognize that the association has been deprived of the legal attributes of incorporation; and if the exercise of powers incident to incorporation is suspended by the state of incorporation, this suspension will be effective in another state."

Comment (*a*) to §158 of the Restatement states:

"a. The method of dissolution or suspension is a question for the state of incorporation; but the courts of another state will inquire whether there has been such a compliance with the prescribed method as to render the dissolution or suspension a valid one, *unless the question has already been passed upon by the courts of the state of incorporation.*" (Italics supplied.)

This section of the Restatement has been adopted as the law of Pennsylvania in Quarture v. C P. Mayer Brick Co., 363 Pa. 349 (1949).

(c) As statutory liquidator, plaintiff had the power to order dissolution of subordinate branches.

It is clear that under New York law the Superintendent of Insurance, as statutory liquidator of the International Order, had the power to order dissolution of all of the subordinate branches of the order.

Section 518 of the New York Insurance Law provides, in part:

"Conduct of delinquency proceedings against insurers domiciled in this state.

"1. Whenever under the laws of this state a receiver [1] is to be appointed in delinquency proceedings [2] for an insurer domiciled in this state, the court shall appoint the superintendent of insurance as such receiver. The court shall direct the superintendent forthwith to take possession of the assets of the insurer and to administer the same under the orders of the court.

"2. As domiciliary receiver the superintendent and his successors in office shall be vested by operation of law with the title to all of the property, contracts, and rights of action, and all of the books and records of the insurer wherever located, as of the date of entry of the order directing him to liquidate a domestic insurer . . . and he shall have the right to recover the same and reduce the same to possession; . . .

"3. Upon taking possession of the assets of a delinquent insurer the domiciliary receiver shall, subject to the direction of the court, immediately proceed to conduct the business of the insurer or to take such steps as are authorized by the laws of this state for the purpose of liquidating, rehabilitating, reorganizing, or conserving the affairs of the insurer . . ."

Section 514 of the New York Insurance Law provides, inter alia:

"Order of liquidation; rights and liabilities

---

[1] The term "receiver" in this section means "receiver, *liquidator*, rehabilitator, or conservator as the context may require": New York Insurance Law, section 517(12).

[2] The term "delinquency proceeding" in this section means "any proceeding commenced against an insurer for the purpose of *liquidating*, rehabilitating, reorganizing, or conserving such insurer": New York Insurance Law, section 517(2).

"1. An order to liquidate the business of a domestic insurer shall direct the superintendent and his successors in office forthwith to take possession of the property of such insurer and to liquidate the business of the same and to deal with the property and business of such insurer in their own names as superintendents or in the name of the insurer as the court or justice before whom such order is returnable may direct, and to give notice to all creditors who may have claims against such insurers to present the same.

"2. The superintendent and his successors shall be vested by operations of law with the title to all of the property, contracts and rights of action of such insurer as of the date of the entry of the order so directing them to liquidate . . ."

In Bohlinger v. Zanger, 306 N. Y. 228, 117 N. E. 2d 338 (1954), the New York Court of Appeals stated the following with respect to the duties of the Superintendent of Insurance in connection with liquidation of insurance companies under the New York Insurance Law:

"In liquidation, the liquidator for all practical purposes takes the place of the insolvent insurer. The liquidation order terminates the company's existence. The liquidator takes immediate possession and control of the assets and proceeds to a liquidation of its affairs . . ."

And in In re Kinney, 257 App. Div. 496, 14 N. Y. S. 2d 11 (1939), the Appellate Division of the Supreme Court of New York said, at page 14:

". . . The Superintendent of Insurance is in effect a statutory receiver (Matter of People, by Van Schaick, (Title & Mortgage Guarantee Co. of Buffalo), 264 N. Y. 69, 80, 190 N. E. 153, 96 A. L. R. 297) ; he is not an officer of the Court and he derives his powers from an act of the Legislature. The Legisla-

ture pursuant to its powers to regulate insurance has provided that the Superintendent of Insurance supersedes the officers and stockholders of the corporation in the control of the corporate affairs. The managing body of the corporation can no longer control its action. The Superintendent of Insurance stands in the place of the managing body . . . ."

Second. Does the instant action constitute a forfeiture of property and violate public policy?

This question must be answered in the negative.

(a) The constitution and bylaws of the International Order constitute a contract between the International Order and the subordinate lodge and its members.

It is well settled in Pennsylvania that the constitution and bylaws of an organization constitutes a contract between the organization and its members. Thus, in Linaka v. Firemen's Pension Fund, 149 Pa. Superior Ct. 458 (1942), the Superior Court said, at page 462:

". . . As a general proposition the constitution and bylaws of a voluntary association constitute the compact which binds its members together and the law by which they are to be governed: Manning v. Klein et al., 1 Pa. Superior Ct. 210, 216. The by-laws constitute the contract of association of its members: Leatherman et al. v. Wolf et al., 240 Pa. 557, 564, 88 A. 17. The by-laws are rules or laws adopted by a corporation or association for the regulation of its own action and concerns, and of the rights and duties of its members among themselves: Hayes v. German Beneficial Union, 35 Pa. Superior Ct. 142, 148; Gordon et al. v. Tomei et al., 144 Pa. Superior Ct. 449, 457, 19 A. 2d 588, . . ."

See also Loyal Orange Institution v. Morrison, 269 Pa. 564 (1921); Grand Lodge, B. of R. & SS. C. v. Girard L., No. 100, 384 Pa. 248 (1956).

(b) The bylaws of the International Order require the local lodge to turn over all funds to the parent body when dissolved.

The International Workers Order, Inc., was organized as a fraternal benefit society. Under the constitution and bylaws of the International Order, dues and assessments were paid by members of the organization to the International Order, in return for which the International Order obligated itself for payment of certain life insurance and other benefits: Constitution and bylaws of the International Workers Order, Inc., sections 102-104, Exhibit D, to the complaint. These dues and assessments were paid to the local lodge which then was obligated to turn this money over to the general office: Section 63, constitution and bylaws, supra.

Section 66 of the constitution and bylaws clearly provides that upon dissolution of a local lodge all of its property and funds become the property of the International Order. This section states:

"66. If a lodge votes to dissolve or if it is dissolved by the order of the General Council, then all its property, funds, documents, supplies, seals, records, etc., of whatsoever kind, nature or description, all of which are hereby declared to be the property of the General Office of the I. W. O., shall be immediately forwarded to the General Secretary-Treasurer."

It is well settled that the constitution and bylaws of a benevolent and fraternal society relating specifically to the disposition of property of a subordinate lodge upon its dissolution will be enforced by the courts. The parent organization of such a society is entitled to the assets of a dissolved subordinate lodge where the constitution and bylaws governing the society explicitly provide that the funds, property or other effects of a dissolved local lodge shall be delivered to, or become the property of, the parent or-

ganization: Pa. St. Camp., etc., v. Wash. Camp. No. 135, 385 Pa. 492 (1956); Grand Castle, Knights of Golden Eagle v. Taylor, 278 Pa. 9 (1923); Nokomis Tribe Red Men Dissolution Case, 331 Pa. 53 (1938). In the Nokomis case, the Supreme Court said, at page 56:

". . . It is clear, and apparently admitted by appellant, that if the dissolution of Nokomis Tribe had occurred prior to its incorporation in 1919, its property would have been deliverable to the Great Council of Pennsylvania,—not because of the Act of June 20, 1883, P. L. 132, (which provides that upon dissolution of an unincorporated association for benevolent, charitable or beneficial purposes, its moneys, property and effects shall be delivered and paid to the parent or superior body, to be held for the purposes and intents for which they were held by the subordinate association), nor because a revocation of its charter would inevitably have the effect of vesting in the superior the property of the subordinate body,—but because the laws of this Order, by which Nokomis Tribe was bound, provided for the delivery of the assets to the state council upon the dissolution of a tribe, to be held for the benefit of those entitled according to the laws and terms under which the funds were contributed: Grand Castle, Knights of Golden Eagle v. Taylor, 278 Pa. 9, 18. It was said in Loyal Orange Institution v. Morrison, 269 Pa. 564, 567: 'When a number associate for the purpose of forming a body of this character, submitting themselves to certain rules and regulations, they inaugurate their own laws for government and agree to be bound thereby. . . .' "

(c) Such a provision is not against public policy in this State.

From the foregoing authorities, it is clear that provisions similar to section 66 of the constitution and bylaws of the International Order are frequently

found in the constitution and bylaws of fraternal societies and are not against public policy. Thus, volume 18, Appleman, Insurance, states, at page 385:

". . . Thus, the general rule seems to be that provisions for forfeiture of title and interest of a subordinate lodge in its property or funds to the society upon forfeiture of the charter of the subordinate lodge, or upon its withdrawal, secession, or termination, are valid and enforceable. Such provisions have been considered not to be confiscatory, nor to be invalid as taking property without due process of law. Upon a lodge becoming defunct, under such provisions, the supreme lodge would succeed to its property, including realty. And the rights of members of a local lodge to its property are considered merely incidental to their membership, so as to terminate absolutely with such membership.

"Generally, the constitution and by-laws of a voluntary association, whether incorporated or not, are controlling as to its internal management. Permitting relative rights as between the surviving members of an unincorporated society's defunct lodge and the society in property of the lodge to be determined by rules of the society to which such members had subscribed does not violate public policy. The court stated that questions respecting what shall become of the property of such association concerns its members only, and when such questions are determined in the association's constitution and by-laws, there is no public policy requiring the courts to make a contrary disposition of the property. . . ."

(d) Under the bylaws of the International Order, all property of a subordinate lodge belongs to the parent body upon dissolution.

The constitution and bylaws of the International Order are attached to the complaint as Exhibit D. Under these bylaws, it is clear that all property of a

subordinate lodge belongs to the parent body upon dissolution.

(e) The domiciliary liquidator of a dissolved insurance company has title to all of its assets, wherever located.

As domiciliary liquidator, plaintiff may assert title to assets of the dissolved insurer in the Commonwealth of Pennsylvania.

1. The restatement rule.

Section 161 of the Restatement of Conflict of Laws provides:

"Universal Succession to Assets.

"If a statute of the state of incorporation which is in force at the time of the dissolution of a corporation provides that all its assets shall, upon dissolution, pass to a person designated in the statute, the right of such person to the personal property, wherever situated and whether tangible or intangible, will be recognized and given effect by other states and the designated person can bring suit in any state upon claims due to the corporation."

In Pennsylvania, as in New York, the Insurance Commissioner upon liquidation of a domestic insurer, becomes vested by operation of law with title to all assets of the company, wherever situate: The Insurance Department Act of May 17, 1921, P. L. 789, as amended by the Act of June 12, 1951, P. L. 515, 40 PS §206.

44 C. J. S., Insurance, §133(2), states the following:

"*A foreign receiver or liquidator of an insurance company vested with title to the assets of the company by the law of the domicile of the company ordinarily is entitled to assert such title in the courts of other states.*

"The general rules governing the extraterritorial rights of a foreign receiver ordinarily apply to a foreign receiver or statutory liquidator of an insurance company, such as the superintendent of insurance, or

a like official. An ordinary receiver has no extraterritorial jurisdiction. However, where the statutory receiver or official liquidator of an insurance company is vested with title to the assets, contracts, and choses in action of the company by the law of the domicile of the company, his title to the assets in other states ordinarily, and at least to a certain extent, will be recognized by the courts of such other states. Since he has such title he has the right and duty to collect the assets situated in other states and he may sue in the courts of such other states to collect such assets as a matter of right and not merely by comity. . . ."

2. Plaintiff, as statutory liquidator, may enforce all contract rights and is entitled to all assets of the International Order, wherever located.

There can be no doubt that plaintiff is a statutory liquidator: National Bondholders Corp. v. Joyce, 276 N. Y. 92, 11 N. E. 2d 552 (1937); In re Kinney, 14 N. Y. S. 2d 11 (1939). As such, he is vested with title to all contracts, property and causes of action heretofore vested in the insurer: Bohlinger v. Mayville Realty Co., 135 N. Y. S. 2d 865 (1954); National Bondholders v. Joyce, supra; In re Westchester Title and Trust Co., 10 N. Y. S. 2d 190 (1939); New York Insurance Law, sec. 518.

It is well settled that the domiciliary liquidator of a defunct insurer has title to all of the assets of the company wherever they may be located: Relfe v. Rundle, 103 U. S. 222 (1880); Wilson v. Alliance Life Ins. Co., 108 F. 2d 150 (5th Cir., 1939); O'Malley v. Hawkins, 194 N. E. 168 (1935); 44 C. J. S., Insurance, §133(d) (2). These holdings are in accord with the policy of Pennsylvania: Commonwealth ex rel. v. Consolidated Indem. & Ins. Co., 362 Pa. 561 (1949).

3. The policy reasons in support of this position are clearly enunciated in Igel v. Phillips, 169 N. Y. S. 897, where the court said, at pages 899-900:

". . . If the superintendent of insurance is not the liquidator of these funds, here we have many subordinate lodges over the whole country, which have no liquidator. The funds on hand would seem to be at the disposal of the majority of the members of that lodge, even as against the protest of a minority. It would be practically impossible to enforce the liabilities of the Grand Lodge as against the individual members of these subordinate lodges, even when those liabilities are liabilities of the subordinate lodge as well. All claims for these funds may be presented to the superintendent of insurance by the individual members of these subordinate lodges, and can be determined by him, subject to court review. The superintendent becomes, then, the liquidator both of the Grand Lodge and the subordinate lodges, even if the ultimate right to the property be not in the Grand Lodge. It would seem to me, not only as necessary to the equitable distribution of the funds and determination of the liabilities of the Grand Lodge, but also a wiser policy than to leave the subordinate lodges wholly without a liquidator in case of the dissolution of the Grand Lodge.

"Moreover, the scheme of the Insurance Law made applicable seems to contemplate a central body, or Grand Lodge, for which these subordinate lodges are mere agencies for the collection of funds and organization of its members. Insurance Law, §§230, 231. Whether or not these subordinate lodges may create an independent fund, when the fund in question is the result of assessments made pursuant to the plan promulgated by the statute for the securing of funds for the central body, the superintendent of insurance, upon insolvency, becomes entitled to the fund for the purpose of liquidation (Insurance Law, §63), and this is all that it is necessary here to decide."

Plaintiff is not confiscating these funds. As statutory liquidator, he is merely the legal titleholder, the equitable owners being those persons, members of the Order, policyholders and creditors, who are justly entitled to share in the assets of the Order. As stated in In re Kinney, supra, at page 14:

". . . While the legal title of the property of the insurance company passed under the court orders to the Superintendent of Insurance, the equitable title of the assets remained for ultimate distribution to its creditors and policyholders. . . ."

Third: Is plaintiff a receiver and, if so, must an ancillary receiver be appointed in Pennsylvania?

Plaintiff is not a receiver but a statutory liquidator, and no ancillary receiver need be appointed in Pennsylvania. A receiver is an officer of the court of the State of his appointment and has no extraterritorial power outside the court's jurisdiction. A statutory liquidator is the successor of the corporation and the assets of the corporation pass to him upon dissolution, wherever situated. He has the right to sue in the courts of other States in his own name to collect such assets, as a matter of right and not merely by comity: 44 C. J. S., Insurance, §133 (d) (2) ; Restatement, Conflict of Laws, §161. Comments a and b to this section of the Restatement provide:

"a. *Statutory successor.* In the Restatement of this Subject the person to whom the assets of a corporation pass upon dissolution, as stated in this Section, is called the statutory successor of the corporation.

"b. If there is no provision in the state of incorporation for assets passing on dissolution to a statutory successor, the assets in each state will be administered according to the law of that state (see §§ 525 and 527)."

In Taggart, Insurance Commissioner, v. Wachter, Hoskins & Russell, Inc., 179 Md. 608, 21 A. 2d 141

(1941), the Insurance Commissioner of the Commonwealth of Pennsylvania sued a Maryland subscriber of a Pennsylvania insurance company to enforce an assessment against the Maryland subscriber. In affirming the right of the Insurance Commissioner, as statutory liquidator, to sue in Maryland in his own name, the Maryland Court of Appeals said, at page 622-623:

". . . The court is of opinion that there is no obstacle to the liquidator's suing in Maryland. He is not an ordinary chancery receiver whose actions might be restricted to the jurisdiction of the order of court appointing him. Southern Bldg. & Loan Ass'n v. Price, 88 Md. 155, 164, 41 A. 53, 42 L. R. A. 206. He is a statutory liquidator holding title; and it is generally recognized that one so holding may sue in another state, for he sues for his own. Upholding the right of a receiver appointed by a Missouri statute the Supreme Court of the United States said: 'He appeared in Louisiana not by virtue of any appointment from the court, but as the statutory successor of a corporation which the Court had in a legitimate way dissolved and put out of existence. He was, in fact, the corporation itself for all the purposes of winding up its affairs': Relfe v. Rundle, 103 U. S. 222, 225, 26 L. Ed. 337. 'In this case the statute confers the right upon the receiver, as a *quasi assignee*, and representative of the creditors, and, as such, vested with the authority to maintain an action. In such case we think the receiver may sue in a foreign jurisdiction': Bernheimer v. Converse, 206 U. S. 516, 534; 27 S. Ct. 755, 761; 51 L. Ed. 1163. And in another case, reversing a decision that such a receiver under the laws of Minnesota could not sue in a foreign jurisdiction, the Supreme Court added: 'In these circumstances we think the conclusion unavoidable that the laws of Minnesota and the judicial proceedings in that state, upon which the receiver's title, authority, and right to relief were

grounded, and by which the stockholders were bound, were not accorded that faith and credit to which they were entitled under the Constitution and laws of the United States.' Converse v. Hamilton, 224 U. S. 243, 255, 261, 32 S. Ct. 415, 420, 56 L. Ed. 749, Ann. Cas. 1913 D. 1292; Broderick v. Rosner, 294 U. S. 629, 641; 55 S. Ct. 589; 79 L. Ed. 1100; 100 A. L. R. 1133. And see for the general rule, Restatement, Conflict of Laws, sec. 567; 3 Beale, Conflict of Laws, p. 1570.

"This right in the liquidator depends not upon a specific authorization in the Pennsylvania statute to bring suits in a foreign jurisdiction, or in his own, but upon the mere facts of title in him to the rights of action, and his statutory duty to collect the assets available to creditors. Relfe v. Rundle, 103 U. S. 222, 26 L. Ed. 337. With that title he would be the only one qualified to bring the suit. . . ."

Plaintiff, as statutory liquidator of the International Workers Order, Inc., is entitled to sue in his own name in Pennsylvania to recover assets of the International Order, and an ancillary receivership, a costly procedure in view of the sum involved, is not necessary.

Fourth: Has plaintiff properly plead the New York law?

This question must be answered in the affirmative. A careful reading of the complaint convinces us that the allegations of fact set forth adequately and completely the law of New York.

The complaint alleges that the International Workers Order, Inc., was a corporation organized and existing under the Insurance Law of the State of New York and subject to its provisions, that plaintiff is Superintendent of Insurance of the State of New York and, by order of the Supreme Court, entered August 24, 1951, was named liquidator of the International Order. Attached to the complaint as exhibits are the order of

dissolution naming plaintiff as statutory liquidator (Exhibit A), the order of dissolution of subordinate branches by plaintiff (Exhibit B), and the order of the New York Supreme Court making the liquidation features of its dissolution order effective (Exhibit C).

Pennsylvania has adopted the Uniform Judicial Notice of Foreign Law Act of May 4, 1939, P. L. 42, 28 PS §291 et seq.

Section 1 of this act provides:

"Every court of this State shall take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States. . . ."

Section 4 of the act states:

"Any party may also present to the trial court any admissible evidence of such laws; but to enable a party to offer evidence of the law in another jurisdiction or to ask that judicial notice be taken thereof, reasonable notice shall be given to the adverse parties, either in the pleadings or otherwise. . . ."

All that is required under the act for the court to take judicial notice of the law of New York is that reasonable notice be given to the adverse parties, either in the pleadings or otherwise. This has been done.

The preliminary objections of defendants will be dismissed.

## Order

And now, to wit, November 13, 1956, it is hereby ordered, adjudged and decreed that the preliminary objections of defendants be and they are hereby dismissed. Defendant is given 30 days to answer plaintiff's complaint.

Eo die, exception noted to International Workers Order, Branch 3006, Fred Storoz, Andy Hrmiko and Matt Dockman, defendants, and bill of exception sealed.